**BARNEY E. SACHS, Plaintiff**

v.

**MARGHERITTA C. SACHS, Defendant**

Civil No. 93-1957

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

October 31, 1957

*See, also, 155 F. Supp. 860*

*Same case on appeal, see 4 V.I.*

WILLIAM H. BAILEY, ESQ., Charlotte Amalie, Virgin Islands, *for plaintiff*

GEORGE H. T. DUDLEY, ESQ., Charlotte Amalie, Virgin Islands, *for defendant*

MOORE, *Judge*

Let the record show that this matter came on for hearing; that the plaintiff is present in person and is represented by his attorney William H. Bailey, Esquire, and that the defendant is present in person and is represented by her attorney George H. T. Dudley, Esquire.

■ I have heard the evidence in the case and have listened to the arguments of both attorneys. Counsel for the plaintiff contends that the defendant's answer and such evidence as was presented by the defendant is that of recrimination, and that submits to the Court the question of comparative rectitude, and that for that reason the evidence which was introduced by the defendant, to which plaintiff's counsel objected, was inadmissible. According to this argument, where a plaintiff claims incompatibility of temperament, the defendant is limited to denying such facts, as the plaintiff has claimed, and the defendant is precluded from setting up any other facts or presenting any other in evidence. This argument does not take into consideration that the plaintiff's evidence, as in this case, might not be believed, and that the facts set up by the defendant may be supported by competent evidence, and believed. This Court is of the opinion that the defendant's

answer and the defendant's testimony were not presented as a recrimination, but is presented in answer to the plaintiff's charge of incompatibility and tends to show that the incompatibility claimed by the plaintiff is due solely and entirely to his fault and not to the fault of the defendant. It is intended to show that the only marital difficulty in fact is the plaintiff's desire to have another woman, to which the defendant objects, and that it is not due to any incompatibility as claimed by the plaintiff.

This Court, therefore, is of the opinion that the evidence admitted in behalf of the defendant is proper.

First, this Court has gone into the question of plaintiff's residence and has heard the plaintiff's entire story. This Court has considered the testimony that the separate maintenance suit of the defendant herein in Worcester, Massachusetts, was finished and a decree entered in her behalf in February of 1957, and thereafter on April 1st, thirty days later, the plaintiff came to the Virgin Islands; that after having come to the Virgin Islands, now seven months later, he is still paying rent on his office and maintains his furniture in Worcester, Massachusetts. He has not brought his furniture, office fixtures and medical instruments to the Virgin Islands. He claims to have given up his practice in Worcester, Massachusetts, and at the same time states that he has no money now within the Virgin Islands, and that he is on charity being supported by his brother whom he owes a total of Twenty-Six Thousand Dollars. Further, he states that he is awaiting a position in the Municipal Hospital of St. Thomas, despite the fact that the testimony of the Commissioner of Health of the Virgin Islands shows that there is no opening in the hospital here; that the defendant would be required to pass the medical board in St. Thomas, and that he is a graduate of a school which is not accredited in the Virgin Islands, which would make it impossible for him to pass the board here.

The Court has also considered that the plaintiff's income would be almost negligible from private practice of medicine in the Virgin Islands, where medicine is so considerably socialized that he would hardly be able to make a living for himself or support his family; and, also, to pay this same office girl whom he has with him in the Virgin Islands and who has been here during his entire period, as he states, waiting to work for him in his medical office in the Virgin Islands. Despite these facts, the plaintiff maintains that he came here to establish residence and to practice medicine here. That story in itself is most unplausible, and in view of the plaintiff's demeanor upon the witness stand in many other instances leaves this Court little faith in any of his testimony. In addition to his testimony that he is unable to pay his wife and two daughters any support whatsoever, he admits that since he has separated from his wife in 1953 he has received, over and above all monies earned from his practice in Worcester during the years of 1954, 1955 and 1956, the following sums: Twenty Thousand Dollars worth of bonds which he owned in 1953 and has since sold; Thirteen Thousand Dollars which he borrowed from the Metropolitan Life Insurance Company and Eleven Thousand Dollars which he borrowed from his brother in notes, or a total of Forty-Four Thousand Dollars over and above all of the money earned in the aforesaid years, and over and above another Fifteen Thousand Dollar mortgage which he gave his brother on his optical business. This testimony is also not plausible or reasonable.

However, assuming the plaintiff's allegations of residence to be true, we must go on to the merits of the case in question. The defendant wife has testified that they lived a perfectly happy and normal life up until November, 1953, when the plaintiff confessed to her that he was having sexual relations with his office girl, Vivienne Francis Monopoli, and that he stated to her that all men in

professional life had their mistresses, and that his wife should accept it as such. He denies that he made such a confession, but it is not denied by the evidence that it was from that time that all of the quarrels between husband and wife arose, nor that all of the quarrels were about this same girl. It is admitted and shown in evidence that from November, 1953, up to today he has kept constant company with this same girl, and even brought her to the Virgin Islands with him when he came seven months ago and that they are both still here in the Virgin Islands living in adjoining rooms at the Caribbean Hotel.

The evidence shows that in 1956 the plaintiff had a woman at the Concord Hotel and was registered with her as Mr. and Mrs. Sachs. He admitted that he was registered at the Concord Hotel as Mr. and Mrs. Sachs, but says that it was his wife who was with him. His wife says that it was not she who was with him. I have observed the demeanor of both witnesses on the stand and I believe the wife. In addition to the demeanor of these witnesses, it is shown by the testimony of another witness in the case, to wit: Henry L. Hickel, that he and the defendant wife went to the hotel to investigate the signature, saw the signature, and states that it is her husband's signature. The defendant wife would have had no occasion to make that investigation if she had been the person registered in the hotel with him. In addition to that, at that time, he had already filed a divorce suit against her in Worcester, Massachusetts, which was dismissed and she filed a separate maintenance suit against him, which was later allowed. Under those circumstances, the wife would not have gone to the hotel with this detective to make the investigation if she had been the one in the hotel with him.

While the evidence does not show that the person registered with him was Vivienne Francis Monopoli, inter-

rogatories of another witness, Mrs. Evelyn L. Willoughby, Manager of Cedar Arms Apartment House where Mrs. Monopoli lived, showed that at the same time he was keeping company with Mrs. Monopoli; that Mrs. Monopoli introduced the plaintiff to her as her "boy friend, Doctor Eddie." Further, Mrs. Willoughby's interrogatories show that she heard Mrs. Monopoli have an argument with him about another man and heard Mrs. Monopoli say to him, "You know, love, I wouldn't do that." Further evidence of Mrs. Willoughby's is as follows: "On one Sunday night I went to the apartment and knocked on the door. As no one answered, I used my pass key to go into the apartment. Miss Francis was in the dinette and Doctor Sachs was in the bathroom shaving. On another Sunday I went to the apartment and Miss Francis was in the dinette and Doctor Sachs was in the bathroom taking a shower."

Further, it is admitted by both parties that the plaintiff and Vivienne Francis Monopoli were on the same boat together taking a cruise in June, 1956. At that time, Mrs. Monopoli was still working in his office. The plaintiff admitted that he gave the check that paid for Mrs. Monopoli's passage. Also, seven months ago, both the plaintiff and Mrs. Monopoli came to St. Thomas together and first stayed at the Morgenstern's Guest House. Although they stayed in separate rooms, Mr. Morgenstern testified that they came and went everywhere together, also, out to meals during the time that they lived there. The evidence further shows that later both of these people moved to the Caribbean Hotel and secured adjoining rooms where they are both still staying at the present time while awaiting his divorce. The evidence further shows that while they stayed at the Morgenstern's the plaintiff paid for both rooms, and plaintiff admits that during the time that they stayed at the Caribbean Hotel he gave his check for both rooms. Plaintiff's story is that

he gave his check for Mrs. Monopoli's cruise which they had together, but that she paid him back. His story further is that during their stay in St. Thomas that he has given his check for the expenses, but she has paid him back. In view of the testimony of all of the other witnesses in this case, that story is preposterous.

Now, it has been argued that all of this testimony does not prove adultery on any occasion, and that although a baby has been born to this same Mrs. Monopoli since she has been in the Virgin Islands, they both deny that the baby is his. The baby lived only one day, was prematurely born and died. Even though this evidence might not be sufficient to support a criminal charge under the Mann Act, 18 U.S.C. § 2421 et seq., or even to prove absolute adultery, it certainly does prove a definite proclivity of the plaintiff for a woman not his wife. And certainly, this Court cannot say under those circumstances that the defendant wife was unjustified in whatever quarrels she had with him about this woman. Certainly, his constant association with this woman, even if he never confessed the adultery, which his wife charges, is sufficient justification for her to quarrel with him about her.

Plaintiff's claim of the facts alleged in his complaint to support incompatibility is supported by plaintiff's testimony alone and no other witnesses. His statement of incompatibility is denied by the wife. And in taking the demeanor of these two witnesses, the Court can unhesitatingly say that it believes the denials of the wife and. does not believe the unsupported assertions of the plaintiff husband.

In summary of the entire situation, it seems to this Court that what the plaintiff claims to be incompatibility is due solely to his conduct with Vivienne Francis Monopoli, and he cannot come in Court and be heard to complain in equity that he has a right to go around constantly

with a woman not his wife, and that his wife has no right to complain about it, and that she therefore is incompatible. It would have been a more true statement if he had merely said in his complaint that "I want another woman; my wife doesn't want me to have another woman; therefore, when she objects, we are incompatible; therefore, I ask for a divorce." That is what it boils down to. And, under these circumstances, this Court cannot find that whenever a man wants another woman, and his wife objects to it, the wife is incompatible, because she does not want him to have the other woman. The defendant wife has stated upon the stand — and her demeanor is such, that this Court has full faith in her testimony — that all she wants is for her husband to give up the other woman and come back and live with her in peace and harmony.

In view of all of the foregoing, the plaintiff's prayer for divorce is denied, and order may be drawn in accordance with this opinion.