Thomas P. **SHEARER**
v.
Mary E. **SHEARER**, Appellant.
No. 15131.

United States Court of Appeals
Third Circuit.

Argued at Christiansted Jan. 26, 1965.

Reargued at Philadelphia Dec. 9, 1965.

Decided Dec. 30, 1965.

Certiorari Denied May 16, 1966.
See 86 S.Ct. 1463.

Freedman and Hastie, Circuit Judges, dissented.

John D. Marsh, Christiansted, St. Croix, V. I., for appellant.

Russell B. Johnson, Christiansted, St. Croix, V. I., for appellee.

Before KALODNER, Chief Judge, and MARIS, McLAUGHLIN, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the wife defendant from a decree of divorce awarded to the husband plaintiff on the ground of incompatibility of temperament. The appellant contends, inter alia, that the evidence failed to establish a state of incompatibility of temperament under the law of the Virgin Islands and that the district court's finding of such incompatibility was clearly erroneous. If so, the decree based upon that finding must necessarily fall.

The Territory of the Virgin Islands was the first American jurisdiction to adopt incompatibility of temperament as a ground for divorce. Burch v. Burch, 3 Cir. 1952, 195 F.2d 799, 2 V.I. 559. That ground is now set out in 16 V.I.C. § 104 (a).[1] Subsequently incompatibility has been adopted as a ground for divorce in New Mexico (in 1933),[2] Alaska (in 1935),[3] and Oklahoma (in 1953).[4] In the Burch case this court discussed at some length the nature and scope of this ground for divorce. In our opinion in that case we said "that while incompatibility of temperament in the Virgin Islands Divorce Law does not refer to those petty quarrels and minor bickerings which are but the evidence of that frailty which all humanity is heir to, it unques-

---

1. "§ 104. DIVORCE

    (a) A legal separation or the dissolution of the marriage contract may be declared at the instance of the injured party for any of the following causes—

       *       *       *       *       *

    (8) incompatibility of temperament."

2. Laws of New Mexico, 1933, ch. 54, § 1.

3. Session Laws of Alaska, 1935, ch. 54, p. 120.

4. Session Laws of Oklahoma, 1953, p. 59, § 1.

tionably does refer to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for the parties to continue a normal marital relationship with each other. To use the ancient Danish phrase, the disharmony of the spouses in their common life must be so deep and intense as to be irremediable. It is the legal recognition of the proposition long established in the earlier Danish law of the Islands that if the parties are so mismated that their marriage has in fact ended as the result of their hopeless disagreement and discord the courts should be enpowered to terminate it as a matter of law." 195 F.2d 806–807, 2 V.I. 571–573.

In the Burch case we were faced, inter alia, with the question whether the plaintiff could assert that he was injured, within the meaning of the statute, by incompatibility of temperament in which he himself had participated. In deciding this question in the affirmative we said that "incompatibility of temperament necessarily involves both parties. While one spouse may have a more normal temperament than the other and the overt acts evidencing incompatibility may come largely from the other spouse, it is inconceivable that a husband's temperament can be compatible with that of his wife if hers is incompatible with his. If there is a clash of personalities both must clash.[5] It necessarily follows, we think, that in cases of incompatibility of temperament both spouses are injured by their common incompatibility. Each has lost the right and opportunity to enjoy a normal marital association with the other." 195 F.2d 808, 2 V.I. 574–575.

■ In the Burch case we were also faced with the question whether the defense of recrimination is available in the Virgin Islands to bar the granting of a divorce upon the ground of incompatibility of temperament or, if not, whether the doctrine of comparative rectitude is available in defense. We held that neither defense is available in such a case but at the same time we pointed out "that evidence of misconduct on the part of the plaintiff may be considered by the court along with all the other evidence in determining whether, in the discretion of the court, the best interests of the parties and of the public will be served by the granting of a divorce." 195 F.2d 810, 2 V.I. 579. The court must, of course, also weigh the possibilities of personal adjustment and reconciliation and the restoration of a normal marital status in determining whether to exercise its discretionary power to grant a divorce upon the ground of incompatibility. Wegener v. Wegener, Okl.1961, 365 P.2d 728, 730. The incompatibility of temperament contemplated by the statute involves, as we have pointed out, a conflict of personalities and dispositions so deep as to destroy the legitimate ends of matrimony and the possibility of reconciliation. It must be "more than a mere mental process or an afterthought conceived and nurtured in the psyche of the complaining spouse." Hughes v. Hughes, Okl.1961, 363 P.2d 155, 158. Thus, for example, if what the plaintiff claims to be incompatibility consists of nothing more than the objections voiced by his wife to his consorting with another woman as his mistress, the court would certainly be justified in denying a divorce upon the ground of incompatibility as it did in these circumstances in Sachs v. Sachs, D.C.V.I.1957, 155 F.Supp. 860, 3 V.I. 264, affirmed on other grounds, 3 Cir. 1959, 265 F.2d 31, 4 V.I. 102.

■ It is obvious that if the court is to make a determination which is just to the parties and to society as to the existence of such an irremediable incompatibility as the statute contemplates the evidence should provide it with a full picture of the personalities and dispositions of the spouses and of their attitude and conduct toward each other. It is important for the court to be informed, so far as it is possible, of the cause of the incompatibility which the evidence is al-

5. This language was quoted with approval and applied by the Supreme Court of Oklahoma in Rakestraw v. Rakestraw, Okl.1959, 345 P.2d 888, 890.

leged to show and whether it is the result of volition or of a predisposition or is congenital. We turn, then, to the testimony in the present case to determine whether it is adequate to support a finding of such irremediable incompatibility as the statute contemplates as a ground for divorce.

Briefly stated, the evidence establishes that the parties were married in 1949 and lived together in Michigan for ten years. Since 1959 they have lived apart. After obtaining a job shortly after marriage the plaintiff worked steadily and supported his family for eight or nine years. The marriage went pretty well during those years. Seven children were born, of whom five survive. In the last eighteen months of their life together, however, the plaintiff became a heavy drinker and he worked less and less. After bouts with liquor he would spend days in bed. He had dissipated an inheritance and they had lost their home through foreclosure. About this time the defendant had hepatitis and lost her seventh child. Unpaid bills piled up. There was, as might be expected, arguing and bickering. On the advice of a marriage counsellor, the defendant instituted in Michigan a suit for separation and support of the children in the hope that it would cause the plaintiff to straighten up and find work. A stipulation for the custody and support of the children was signed. About the same time plaintiff left the defendant and the family home and has not since lived with the defendant. A few months after the separation the plaintiff made his way to the Virgin Islands but he continued his heavy drinking for three years or more and he failed to meet his obligations to support his children. In the last three years, however, he has stopped drinking liquor, has rehabilitated himself and is now earning a living in the Virgin Islands and providing some support for his children.

The foregoing summarizes all of the evidence bearing upon the issue of incompatibility. There is in it no explanation of the cause of the plaintiff's alcoholism. Any inference that this was caused by marital incompatibility is rebutted by the fact that it did not occur at or near the outset of the marriage, but long afterward at the time when he suffered serious financial reverses and that it continued for several years after the separation. The plaintiff's only explanation of the basis of the difficulties of the parties was that "There is something", he did not explain what, "that when we live together I don't work. The marriage doesn't work and then, in turn, I don't work." But even this cryptic explanation is belied by the history of eight or more years of normal married life during which the plaintiff worked regularly and supported his family and during which he fathered seven children. The defendant, moreover, testified that, except for his drinking and consequent failure to support his family, the plaintiff has a wonderful character. She also testified that she believes that if the plaintiff will provide a home for her and the children it will be possible for them to live together compatibly.

We think that the testimony wholly fails to provide any substantial support for the district court's finding of incompatibility of temperament. That finding is clearly erroneous. Whether the extremely sketchy and cryptic character of the plaintiff's testimony is due to a commendable desire to spare the feelings of his wife, as his counsel suggested at bar, we do not know. But for whatever reason it is clear that it falls far short of disclosing a state of irremediable incompatibility of the parties. Indeed all that it does show is that when faced with serious financial reverses the plaintiff took to drink from which he has now freed himself and that the defendant is willing to resume the marital relationship but he, for some undisclosed reason, is reluctant to do so. Here is certainly no disclosure of an irremediable disharmony in their common life.

Since the finding of incompatibility cannot stand the decree of divorce for which it provides the basis must be reversed. Accordingly it becomes unneces-

sary to consider any of the other contentions of the defendant.

The decree of the district court will be reversed and the cause remanded with directions to dismiss the complaint, with costs and a reasonable counsel fee to the defendant together with the travelling expenses of defendant's counsel to attend the reargument of the appeal in Philadelphia.

FREEDMAN, Circuit Judge, with whom HASTIE, Circuit Judge, joins (dissenting).

I believe the evidence, however sketchy it may be, amply supports the findings of fact of the district judge, and that the decree therefore should be affirmed even though as a trial court we might have reached a different result.

## I

There is no disagreement on the definition and the meaning of incompatibility laid down in Burch v. Burch, 195 F.2d 799, 2 V.I. 559 (3 Cir. 1952). It exists where the conflict in the personalities of the parties is so deep as to be irreconcilable and this condition has existed sufficiently long to justify the conclusion that it is irremediable. The real question is in the application of that definition to the evidence.

The district judge made two findings of fact which underlie his decree:

"6. The parties while living together argued and bickered constantly with each other and as a result thereof, an action for legal separation was brought by the defendant and against the plaintiff in the State of Michigan and the plaintiff left the marital abode as per agreement of the parties.

"7. There exists between the parties such a deep-seated conflict in personality and disposition as to be irreconcilable and which would not lend itself to a resumption of a normal marital relationship."

The command of Rule 52(a) is that these findings of fact are binding upon us "unless clearly erroneous, and [that] due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The record admittedly is meager. But we should not be indifferent to the explanation, which tells us much of the character of the plaintiff. As a civilized person the plaintiff refrained from heaping blame and criticism on his wife, but instead simply revealed that in the process of living together there developed a disharmony that was deep and irremediable. As the district judge observed at the trial and as the wife apparently agreed, the husband was animated by a commendable desire to be sparing in describing their marital difficulties in his wife's presence.[1] It is significant that the evidence regarding the visits to the marriage counselor came from the wife and not from the husband. It confirms the sparsity of his evidence and his reluctance to penetrate deeply into the nature and cause of their marital disharmony. Moreover, both parties and the district judge approached the problem in the same manner and felt no need to explore the underlying cause of their difficulties. The parties were the only witnesses. The husband was unable to explain the cause of their disharmony and the wife did not undertake the task. The judge promptly announced in the presence of the parties his conclusion that incompatibility had been established.

---

1. At the conclusion of the husband's testimony, in a colloquy with defendant's counsel, the district judge said: "I just sensed a hesitancy on his part of saying anything against his wife, the mother of his children, other than they couldn't get along, and it was impossible for them to get along. Now what more can you expect?"

In a colloquy with the wife, the district judge said:
"Q. * * * He didn't want to say anything against you.
"A. Yes, I realize that.
"Q. And I realized this all the way through and his lawyer didn't push him and I think the children are more important than both of you.
"A. This is true."

Indeed the wife's defense did not challenge the claim of incompatibility but was based entirely on the ground that the plaintiff came into court with unclean hands[2] and was solely at fault for the inability of the parties to continue a normal marriage relationship.[3] These contentions were pressed on the district judge at the trial by defendant's motion to dismiss at the close of the plaintiff's testimony.[4] At the reargument at bar the wife's counsel acknowledged that there was adequate evidence to show incompatibility and maintained that he was not attacking the decree on the ground of insufficiency of proof but rather because the plaintiff was the wrongdoer. Thus a defense based on inadequate legal grounds is now sustained on a factual ground which was not pressed and which I believe inadequate.

Despite the commendable reluctance of plaintiff to disparage his wife, there are a number of solid facts in the record which are sufficient to support the decree.

1. In the ten years of their married life together[5] seven children were born to the parties and they suffered the tragedy of the loss of two children. In these circumstances many couples would have been drawn closer together, whatever their difficulties might have been. It is undenied, however, in this case that they argued and bickered, and the marriage became so unsatisfactory to both parties that the wife sought out the aid of a marriage counselor, a necessity to which the husband also submitted in May, 1958. The marriage counselor's aid proved inadequate, although the wife said that it helped her.

2. While the parties were living together the wife consulted counsel and sued for separate maintenance. The husband was served at the marital home. He was clearly surprised. It was this action of the wife that caused him to leave.

The wife claimed that her suit was an act of formalism meant to shock her husband into a recognition of his responsibilities. The majority now accepts this explanation, but the district judge who saw and heard the parties did not accept it, and I see no reason why we should consider ourselves better qualified to decide it. But whether the wife was justified or not, and whether her act was the reasonable product of her distress are beside the point. Its relevance is not in determining any malice on the part of the wife or any default by the husband which the wife sought to remedy. The significance of this act as it was viewed by the district judge is that it shows that the parties had gone beyond the point of everyday domestic dispute and had reached that serious stage of disharmony where the wife had consulted counsel and gone to court against her husband. No matter how justified the wife may have been in seeking a remedy in the courts, this is powerful evidence of incompatibility of the parties.

3. After the suit was brought the wife's lawyer attempted to effect a reconciliation. The effort failed and a stipulation was presented to the husband for support of the children, which he signed in November 1959.

4. Since November 1959, when the stipulation was signed, the parties have lived separate and apart. It is strong proof of incompatibility that the parties have been living apart for six years.[6]

2. Defendant's motion to dismiss, ¶ 2.

3. Answer to complaint, ¶ 5.

4. Transcript of testimony, p. 21.

5. A civil marriage was contracted; it was followed by a church ceremony in March, 1950.

6. In Chappell v. Chappell, 298 P.2d 768, 58 A.L.R.2d 1214 (Sup.Ct.Okl.1956), the

court sustained the granting of a divorce for incompatibility after a marriage of less than one year because the parties lived and worked in separate towns and were together only on week-ends and found themselves unable to work out their financial matters.

In Rakestraw v. Rakestraw, 345 P.2d 888 (Sup.Ct.Okl.1959), a divorce for incompatibility was granted over the op-

Indeed, in recognition of this many states have made voluntary separation for a few years a ground sufficient in itself for the granting of a divorce.[7]

5. Since 1959, when the lawyer's effort at reconciliation failed and the stipulation was signed, no efforts at reconciliation have been made by either party. For about six months after the stipulation was signed plaintiff remained in the general area and in the years that have followed he returned twice to Michigan, where he saw his wife and gave her small sums of money. One occasion was in 1961 and the other during the Christmas season of 1963. Yet the record is without any testimony of an effort at reconciliation. Finally, when she flew to the Virgin Islands to appear at the trial of the divorce case on July 8, 1964 the wife remarked to him that he could get a big house and they could live at separate ends of it. Whether this remark was facetious, as her counsel suggested at bar, or serious, it shows her recognition of the extent of their estrangement and their deep-seated and irreconcilable disharmony that a reconciliation as she viewed it would be one of formal appearance of seemingly living together, although in fact remaining apart.

6. The disharmony which existed between the parties instead of being reduced by efforts at reconciliation was hardened by the wife's resort to the remedy of having plaintiff jailed in the Virgin Islands for arrearages in support. However much the plaintiff may have deserved his imprisonment and however justified may have been the wife's resort to so drastic a remedy it must inevitably have emotionally deepened their estrangement.

7. When the plaintiff was asked why he did not accept the challenge of the wife's suggestion on her arrival in the Virgin Islands he replied that he "couldn't do it and get ahead. * * * There is something that when we lived together I don't work. * * * The marriage doesn't work and then, in turn, I don't work. * * * I truthfully couldn't [tell why the marriage doesn't work]. It just doesn't work. And I think I tried to give it a fair go." Later in his testimony, acknowledging that part of the reason for his not working in the last four months of their life together was his heavy drinking, he also said that the rest of the reason was "that we were very unhappy at the end and that we both knew that the separation was coming about."

position of the wife where the husband was largely, if not entirely, at fault. The basis for the decision was that regardless of the relations of the parties while they lived together, their situation since their separation showed that a normal marital relationship was not possible.

In Poteet v. Poteet, 45 N.Mex. 214, 223, 114 P.2d 91, 96 (1941), the court expressed the view that the 1933 amendment which made incompatibility a ground for divorce conferred a discretionary power which it equated with the earlier power, granted in 1901, to award a divorce from bed and board where the parties had been permanently separated. The court said that a permanent separation would be deemed strong evidence of incompatibility. " * * * [T]he facts which the Court finds sufficient to warrant a permanent separation and relief arising therefrom under the 1901 Act, since the 1933 amendment, might be deemed of force enough to sustain a decree for total divorce. We are not to be

understood as saying that in all cases a permanent separation must necessarily precede action for divorce on the ground of incompatibility.

"We have seen that the parties being incompatible is the cause of their not being able to live or cohabit together as husband and wife, and conversely the fact that they can no longer live or cohabit together as husband and wife is evidence of incompatibility."

7. See 2 Vernier, American Family Laws (1932), § 73, p. 65, where is is said that this ground for divorce is in effect the equivalent of incompatibility of temperament. The statutes are listed in Note, Divorce on Ground of Separation, 18 Wash. & Lee L.Rev. 157, at 164–66 (1961). Decisions under these statutes are collected at Sitterson v. Sitterson, 191 N.C. 319, 131 S.E. 641, 51 A.L.R. 763; George v. George, 56 Nev. 12, 41 P. 2d 1059, 97 A.L.R. 985; Knabe v. Berman, 234 Ala. 433, 175 So. 354, 111 A.L.R. 867; Otis v. Bahan, 209 La. 1082, 26 So.2d 146, 166 A.L.R. 498.

However. halting this explanation may be, it is direct and explicit evidence of the failure of the marriage, evidence which the district judge who saw and heard the parties accepted as true.

8. Plaintiff's complete rehabilitation since the parties separated and he went to live in the Virgin Islands is conceded. When plaintiff left he was drinking heavily and was incapable of providing for his family to such an extent that he appeared indifferent to their needs. During the six years in which the parties have lived apart plaintiff has overcome those difficulties which became overt while they lived together and now, when the weight of the marriage relationship has for all practical purposes been cast off, he has become a self-reliant, responsible person. The wife herself says that he has maintained the respect of his children and has begun to make contributions to the support of his family. The dramatic alteration in the personality of the husband and his rehabilitation since the separation is a strong retrospective element of proof of the incompatibility of the parties when they lived together.

This evidence is clearly sufficient to sustain the finding of mutual incompatibility. In so holding there is no need to declare either party to be an offender, for it is not important from whose conduct the disharmony resulted. It may well exist in circumstances where one spouse is the hammer and the other the anvil in the clash of their personalities. The negative attitude of one may bring into expression the affirmative conduct of the other. Where incompatibility is the ground for divorce fault should recede into the background and be superseded by the inquiry into the suitability of the spouses for each other as shown by the reality of their marital life. Unless we are to require in cases of this kind a plunge into the depths of the emotional make-up and qualities of each party the law can do no more than accept the external symptomatic evidence of their irreconcilable disharmony and from it deduce that incompatibility was the cause. I therefore fail to see any justification for the majority's criticism of the husband's failure to make specific the reason for his excessive drinking and of the incompatibility of the parties. It would be strange indeed if the plaintiff in the ingenuous statement of his situation had been able to present us with their underlying cause. "The suffering symptomatic of a disease confers upon the victim no scientific understanding of its cause." 2 Freedman, Law of Marriage and Divorce in Pennsylvania (1957), § 269, p. 673. How much more difficult than a description of the causes of organic illness must it be for those who are the victims of marital disharmony to penetrate into its underlying cause.

We should not be driven to make of a simple case of incompatibility of temperament a contest between psychiatric experts plumbing the depths of the unconscious qualities of the parties. We shall otherwise be led to the use of opinion evidence on the ultimate question whether the differences in the temperaments of the parties which make it impossible for them to get along together in moderate harmony are unchangeable, or on the other hand whether increasing insight may so alter their unconscious motivations that their disharmony will melt into a tolerable marital existence.

In any event, the court below did not have the benefit of psychiatric evidence reaching into the causes of the difficulties of these parties. But one need not be a psychiatrist or a marriage counselor to know that a husband who sought refuge in bouts of drinking which confined him to bed for two and a half days at a time was seeking escape from the pressure of a problem which he could not surmount. Since the symptom appeared during the marriage and disappeared some time after the termination of the marital cohabitation, the district judge had a right, as I view it, to believe that the husband's drinking to excess was related to the marital situation in which it arose and in the absence of which it dissolved. This evidence, along with the other evidence in the case, justified his

determination that incompatibility existed.

In these circumstances, although we are all in agreement on the legal dimensions of the doctrine of incompatibility of temperament, I think it is desirable to show the fundamental difference between the conception of divorce for incompatibility of temperament and the traditional grounds for divorce.

## II

The notion of fault and its correlative, punishment, has deep roots in moral and religious beliefs. Its influence is strong in the law, running from the underlying element of guilt in criminal law,[8] to the notion of culpability as the basis of liability in torts.[9] The element of fault pervades divorce law today.

American divorce laws generally are founded on the notion of fault on the part of a guilty spouse for which the innocent and injured spouse may obtain a legal dissolution of the marriage. This fundamental principle is derived from the policy of England where absolute divorce was long unknown because marriage was deemed a sacrament, indissoluble except by death. There until as late as 1857 divorce was available only by special Act of Parliament. In that era husband and wife were not permitted to live apart, even by agreement. The English ecclesiastical court compelled the absent spouse to resume cohabitation by its decree for the restitution of conjugal rights, which was enforceable by contempt. However, the expense and delay involved in obtaining a special Act of Parliament were so great that a Commission was appointed in 1850 to inquire into the law of divorce. The report of the Commission in 1853 was the foundation of the statute of 1857 creating the Court of Divorce and Matrimonial Causes (20 & 21 Vict., c. 85), which for the first time established the right to a judicial decree of absolute divorce.[10]

In America marriage has generally been considered a civil institution and absolute divorce was recognized by statute much earlier than in England. But here too the religious view of marriage has been reflected in the grounds for divorce which are founded in general on the fault of a guilty spouse.

Incompatibility of temperament is utterly antagonistic to the conception of fault or wrongdoing as a ground for divorce and has found little recognition in American states. It has been adopted only in New Mexico, in 1933,[11] and in Oklahoma, in 1953.[12] It was adopted in the Territory of Alaska in 1935.[13] In New Mexico, where most of the reported decisions on the subject are found, the courts have had difficulty in dealing with this ground for divorce, even in the formulation of its definition [14] and especial-

8. See Hall, General Principles of Criminal Law (2d ed. (1960)), p. 70 et seq.

9. See 2 Harper & James, The Law of Torts (1956), § 12.4, and authorities there cited.

10. See Freedman, Law of Marriage and Divorce in Pennsylvania (2d ed. 1957), Vol. 1, §§ 100, 101, Vol. 2, §§ 352, 354.

11. Laws of New Mexico (1933), ch. 54, § 1, 5 N.Mex.S.A. § 22–7–1(7) (1954).

12. Session Laws of Oklahoma, 1953, p. 59, § 1, 12 Okla.S.A. § 1271(7).

13. Session Laws of Alaska, 1935, ch. 54, p. 120; Alaska Compiled Laws Annotated, 1949, Vol. 3, § 56–5–7; substantially reenacted, Session Laws of Alaska, 1962, ch. 101, § 12.05(5) (C), 9 A.S.A. § 09.55.110(5) (C) (1962).

14. In Poteet v. Poteet, 45 N.Mex. 214, 222–23, 114 P.2d 91, 96 (1941), the court declined to define incompatibility, saying: "We decline appellant's invitation to give an exact definition of incompatibility. Mr. Justice Hudspeth [in his concurring opinion in Chavez v. Chavez, 39 N.Mex. 480, 50 P.2d 264] quoted an eminent authority as saying: 'The elements and qualities which may create incompatibility between persons elude exact definition, so varied are the circumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character.' We have no doubt the District Judges understand the wide signification of the word and will apply it understandingly to the facts of a particular case. Some of the lexicographers give 'irreconcilableness' as a synonym. We

ly in deciding what recognition should be accorded to the defense of recrimination. A defense of recrimination would be anomalous, for the cause of divorce for mutual incompatibility would be cancelled by a recriminatory charge of incompatibility.[15]

The Virgin Islands was the first American jurisdiction to adopt incompatibility as a ground for divorce, as Judge Maris has shown in his scholarly opinion in Burch v. Burch, 2 V.I. 559, 195 F.2d 799 (3 Cir. 1952). It was recognized in 1920 in the Code of Laws of the Municipality of St. Croix and in 1921 in the Code of Laws of the Municipality of St. Thomas and St. John, as enacted by their respective Colonial Councils.[16] It has been carried into the Divorce Law, § 7(8), enacted by the Legislative Assembly in 1944. (16 V.I.C. § 104(a) (8)).

Judge Maris in tracing the history of incompatibility as a ground for divorce in the Virgin Islands has shown that it owes its origin to Danish law. It is necessary to refer to this history because it reveals that in the Virgin Islands incompatibility of temperament has a special, historically recognized meaning. The lesson of this history is that in the interpretation of the meaning of incompatibility of temperament we should be free from restrictions derived from conceptions of the English ecclesiastical law and from the consequent difficulties which states like New Mexico and Oklahoma have encountered in the application of this ground for divorce.

Under the Danish law which was in force in the Virgin Islands at the time of the adoption of the Codes in 1920 and 1921, divorce on grounds analogous to incompatibility of temperament had been recognized for many years. The old sources cited by Judge Maris show that after 1770 divorces in Denmark increased in frequency and were granted for unmerited misfortunes such as insanity and for irremediable disharmony in the common life. From 1790, the records show that an important change occurred and that thereafter many divorces were granted without any distinct legal grounds, notably when the parties had separated, but also where there had been no separation. By a law of 1827, in force in the Danish West Indies, a royal consent divorce might be given by the authorities when spouses had lived apart for three years after a separation agreement and spiritual and temporal mediation had failed and both parties desired a dissolution of the marriage and were agreed on the terms of the divorce. See Burch, 195 F.2d p. 805, n. 9, 2 V.I., p. 570.

It is because of this historical heritage that when the Codes of 1920 and 1921 were adopted, although they were taken largely from the Code of the Territory of Alaska, there were added the two grounds of insanity occurring after marriage and incompatibility of temperament, grounds unknown to Alaska but recognized under the Danish law then in force in the Islands. "Since these were grounds then unknown to the Alaska law but recog-

---

venture the suggestion that this is an important factor to be considered, in granting or refusing divorces upon the ground of incompatibility."

15. See Clark v. Clark, 54 N.Mex. 364, 225 P.2d 147, 21 A.L.R.2d 1263 (1950), limiting Pavletich v. Pavletich, 50 N.Mex. 224, 174 P.2d 826 (1946), which in turn had overruled in part Chavez v. Chavez, 39 N.Mex. 480, 50 P.2d 264, 101 A.L.R. 635 (1935).

The Clark case held that it would be absurd to say that incompatibility could constitute a recriminatory defense to a charge of incompatibility, but that as to traditional defenses resulting from plaintiff's acts, such as adultery, the trial

judge had discretion in granting or denying a divorce and this was to be based upon the determination whether it would shock his conscience to grant a divorce to such a guilty plaintiff.

Earlier in Poteet v. Poteet, 45 N.Mex. 214, 114 P.2d 91 (1941), the court had refrained from deciding whether recrimination was available as a defense where the sole ground for divorce was incompatibility.

16. Code of Laws of the Municipality of St. Croix, Title III, Chapter 44, Section 7, subdivision Eighth.

Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapter 44, Section 7, subdivision Eighth.

nized under the Danish law then in force in the Islands it would seem most likely that they were added to preserve that existing law. This background throws light upon the intended meaning of the phrase ['incompatibility of temperament'] as a statutory ground for divorce in the Virgin Islands." Burch, 195 F.2d, p. 806, 2 V.I., p. 571.

We therefore had no difficulty, in the light of this history, in defining incompatibility of temperament in clear and concrete terms. In the Burch case Judge Maris said: "We conclude that while incompatibility of temperament in the Virgin Islands Divorce Law does not refer to those petty quarrels and minor bickerings which are but the evidence of that frailty which all humanity is heir to, it unquestionably does refer to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible for the parties to continue a normal marital relationship with each other. To use the ancient Danish phrase, the disharmony of the spouses in their common life must be so deep and intense as to be irremediable. It is the legal recognition of the proposition long established in the earlier Danish law of the Islands that if the parties are so mismated that their marriage has in fact ended as the result of their hopeless disagreement and discord the courts should be empowered to terminate it as a matter of law." 195 F.2d, pp. 806–807, 2 V.I., pp. 571–73.

For the same reason we had no difficulty in resolving in the Burch case the awkwardness of the inclusion of incompatibility as a ground for divorce in a statute which included traditional grounds based on the fault or wrongdoing of the defendant and which made the remedy of divorce available "at the instance of the injured party". (16 V.I.C.

§ 104(a)). We there referred to impotency existing at the time of marriage [17] and insanity occurring after the marriage as cases where there can be no question of either innocence or guilt. We therefore concluded that the same reasoning prevailed where the ground was incompatibility of temperament: "[T]he plaintiff was not required to prove himself innocent of any conduct which might have been grounds for divorce at the instance of the defendant but only that he had been injured by the existence of the ground which he asserts, namely, incompatibility of temperament." Burch, 195 F.2d, pp. 807–808, 2 V.I., p. 574.

Thus the history of the development of divorce in the Virgin Islands under Danish law, as shown by the records after 1790 and the law of 1827, sheds its light on the meaning of incompatibility as a ground for divorce. We are freed by this history to approach each case of incompatibility with views unfettered by the traditional Anglo-American requirement of fault or wrongdoing by the defendant and to recognize that it is the policy of the Virgin Islands statute to terminate marriage on this ground where the parties have lived apart for a sufficiently lengthy period of time and under circumstances which make it clear that the marriage has failed.[18]

The policy of the Virgin Islands, rooted in its long history, avoids the evils which have followed from the traditional American view of divorce. The evils of migratory divorce with its easy acceptance of false claims of domicil, the prevalence of perjury, the widespread existence of collusion, are all matters of common knowledge. They bear testimony to the corrupting influence of keeping bound in a marriage that has failed those to whom marriage is not a sacrament indissoluble

17. Impotency is one of the so-called traditional grounds for divorce. This, too, is a ground not based on wrongdoing. It is, however, inherently a ground for annulment, but where annulment is limited to void rather than voidable marriage it is included in the causes for divorce. An analogous ground for divorce was early established in Pennsylvania for this reason. See 1 Freedman, Law of Marriage and Divorce in Pennsylvania (2d ed. 1957), § 6.

18. The Virgin Islands Code, Title 16, §§ 108, 109, makes adequate provision for the custody and support of spouse and children.

except by death. It is, therefore, of the highest importance that we fully effectuate the enlightened social policy of the Virgin Islands even though incompatibility of temperament may strike discordantly on minds accustomed to the restriction of divorce as a remedy available only at the suit of the innocent spouse against a guilty party. Whatever may be our individual views on divorce, we should not accord this policy a hostile or even a grudging recognition, but should rather recognize that amidst the diversity of opinion on the profoundly important social question of divorce it is the right of the legislature to prescribe the causes for the civil dissolution of marriage.

We should, therefore, view the facts in this case freed from conceptions of fault or wrongdoing by either party and consider only whether this marriage is irreconcilably broken.

### III

Today, after six years of separation, instead of a bickering household and an alcoholic husband, there is a rehabilitated inhabitant of the Virgin Islands, a father who is idolized by his children, a wife living thousands of miles away in Michigan who has established a separate way of life for herself and has never sought a reconciliation, and five children who are doing well at school, relieved by the separation from the burden of being witnesses and victims of marital disharmony. It is just for such a situation that I believe incompatibility of temperament was established as a ground for divorce. To maintain the nominal marriage in these circumstances is to adhere to a view of the marriage relationship which has been discredited in the act of adoption of incompatibility of temperament as a ground for divorce.

The majority acknowledges that the district judge must exercise his discretion in determining whether the best interests of parties and the public will be served by the granting of a divorce. I find it impossible to conclude that the district judge abused his discretion in

legally terminating a marriage which has long since ended in fact and now is to exist only in name.

I therefore dissent from the reversal of the decree of the District Court.