ROBERT H. SCHLESINGER, Appellee

v.

NATALIE J. SCHLESINGER, Appellant

No. 16,871

United States Court of Appeals

Third Circuit

Argued February 1, 1968

Filed July 31, 1968

*See, also, 399 F.2d 7*

JOHN F. FINN, JR., ESQ., New York, New York, *for appellant*

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellee*

Before KALODNER, STALEY and SEITZ, *Circuit Judges*

KALODNER, *Circuit Judge*

## OPINION OF THE COURT

This is an appeal by the wife defendant from a Judgment of absolute divorce awarded to the husband plaintiff on the ground of incompatibility of temperament. Defendant's critical contention[1] is that the evidence failed to establish a state of incompatibility of temperament within the meaning and contemplation of the Virgin Islands divorce statute, 16 V.I.C. § 104 (a).[2]

We must turn to the evidence to determine whether it adequately supports, within the meaning and contemplation of the Virgin Islands divorce statute, the District Court's finding of incompatibility of temperament.[3]

These "background" undisputed facts may be stated in preface of our review of the testimony on the score of incompatibility:

---

[1] Defendant also contends that the District Court erred (1) in its trial rulings relating to the admission and exclusion of testimony; (2) failure to grant her a sought decree of legal separation; (3) disposition of jointly held property, and (4) in disposing of her claim for alimony.

[2] "§ 104. Divorce
    (a) A legal separation or the dissolution of the marriage contract may be declared at the instance of the injured party for any of the following causes—
                    \*        \*        \*
    (8) incompatibility of temperament."

[3] The District Court regrettably did not make any findings of fact or state conclusions of law which indicated the basis of its finding of incompatibility, as it was required to do under Rule 52(a) F.R.C.P., 28 U.S.C.A. Kruger v. Purcell, 300 F.2d 830 (3 Cir. 1962). It merely found, without more, "That a state of incompatibility of temperament exists between the parties which is so deep seated that reconciliation is impossible". Para. 4 Findings of Fact.

673

The parties were married in Christiansted, St. Croix, Virgin Islands on November 15, 1962 when plaintiff was 44 years old and defendant was 35; he was then, as he is now, engaged in the real estate brokerage business in St. Croix; he has a $28,000 annual income from a trust estate; defendant is a college graduate; prior to her marriage she was employed by the Government of the Virgin Islands; since the parties separated she has been employed as a real estate saleswoman; plaintiff and defendant were each twice married prior to November 1962, and these marriages were dissolved by judicial decree; they are childless; they lived together for almost three years until their separation in mid-September 1965; the instant action for divorce was commenced on December 2, 1965 and it came to trial in February, 1967; in March 1965—two and a half years after their marriage—they made plans for the construction of a $65,000 house; retained architects to prepare plans for the house and arranged financing of its construction.

Coming now to the evidence bearing on the issue of incompatibility:

Plaintiff testified that his marriage, almost from its inception, was marked by a series of verbal quarrels punctuated by defendant's acts of violence; three weeks after the marriage defendant struck him with her slipper when they quarreled; two weeks later they quarreled again and this time she struck him with a candlestick and bit his leg, and he had to strike her to break her hold on him; about a year later there was another quarrel in which she struck him with a vase; in March 1965—about two and a half years after the marriage—she hit him with a heavy glass tumbler, and pierced his lip with a fork during another quarrel; in August and September 1965 they had several quarrels in the course of which she struck him in the face with a hairbrush, threw a drink in his face, bit his

674

arm, and ripped his shirt; during this last quarrel which took place September 13, 1965, he had to bite her finger (which was thereby broken) in an effort to extricate himself from her hold on him; quarrels often followed defendant's "drinking".

Defendant in her testimony vigorously denied she had committed any of the acts of violence charged by plaintiff during the quarrels which antedated those which occurred in August–September; she in substance characterized these earlier quarrels as being of the garden variety of normal husband-wife quarrels which were immediately forgotten and which did not affect their relationship of loving husband and wife; plaintiff sent her to Europe in June 1965 to buy furniture for their recently projected new $65,000 home, and while she was there he sent her at least six letters in which he declared his great love for her and told her how badly he missed her, and she replied in kind; during her European visit plaintiff telephoned her on one occasion because he had not received mail from her for several days and he told her he did so because he was concerned about her well-being; their marriage came to grief when she learned upon her return from Europe on August 5, 1965, of plaintiff's attentions to a 21-year-old young woman and he told her he wanted a divorce so that he could marry this girl; they had bitter quarrels as a result which were marked by mutual violence; despite all that had happened she still wished to be reconciled and "I certainly think it [the marriage] could be reconciled".[4]

Defendant in corroboration of her testimony that her relationship with the plaintiff prior to her return from Europe was that of loving husband and wife adduced the testimony of their servants and mutual friends to that effect.

---

[4] N.T. 220.

It must be noted parenthetically that the plaintiff, while denying any illicit relationship with the young woman involved, testified that "I ran after her", and did not deny that he had told defendant he wanted a divorce so that he could marry this young woman.

■ On our review of the entire evidence we are "left with the definite and firm conviction that a mistake has been committed"[5] in the District Court's fact-finding that a state of incompatibility of temperament existed which supported its granting of an absolute divorce to the plaintiff, and that the finding was "clearly erroneous", and must be reversed for that reason. Korn v. Korn, [6 V.I. 296], 398 F.2d 689 (3 Cir. 1968), decided June 28, 1968.

The marital history of the parties on this review, must be divided into two chapters; the first chapter embraces their relationship from the date of their marriage in November 1962 until her return from Europe on August 5, 1965; the second chapter, their relationship from her return from Europe to their separation in mid-September 1965.

The sum of plaintiff's contention with respect to the first chapter is that "the record demonstrates arguing and bickering between the parties in private, particularly after the defendant had a few drinks".[6] Their arguments, plaintiff adds, were attended by defendant's physical assaults on him and they eventuated into his conclusion in March 1965, when she struck him with a heavy tumbler, that they were "incompatible" and "that the marriage was destined to go on the rocks".

Putting aside defendant's denial that her arguments with plaintiff were marked by physical encounters, the evidence cannot rationally be held to establish a state of

---

[5] United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
[6] Brief for Appellee, p. 3.

incompatibility of temperament during the first chapter of the parties' marital history by reason of these undisputed facts:

First: in March 1965 about two and a half years after their marriage, plaintiff and defendant launched plans to build a new $65,000 home on a site valued at $25,000. They then proceeded to arrange financing of its construction and plaintiff sent defendant to Europe to purchase fixtures and furniture for the new house.

Second: while defendant was in Europe plaintiff sent her numerous letters in which he declared his love for her and said how much he missed her. Of critical significance in evaluating the relationship of the parties during this first chapter is the fact that the letters demonstrated that there existed between the parties a warm and strong community of interests; in them he told her in detail of developments in the course of his real estate business; the progress of plans for their new home and gossipy details with respect to their mutual friends. All in all, these letters were the kind of letters which a loving and devoted husband would write to a loving and devoted wife. They were, of course, introduced into evidence.

As earlier stated defendant replied to these letters in kind; in them she declared her love for plaintiff; how much she missed him; recited in detail her day-to-day activities in Europe and told of her visits to furniture dealers in connection with purchases to be made for their new home.

It has already been noted that plaintiff phoned defendant while she was in Europe because he had not heard from her for several days and was concerned about her well-being.

As to the first chapter of this marital history, the rational conclusion to be drawn from what has been said about the parties' quarrels, in the light of their loving and warm letters and their going-forward with plans for a new

home launched in March 1965, when one of the most bitter of their quarrels took place, is that while their marital barque at times encountered and was tossed about by stormy weather and heavy squalls, as it sailed the seas of matrimony, the barque did not founder "upon the rocks of disharmony"; the turbulence was of temporary duration and did not result in creation of a status of incompatibility of temperament within the meaning and contemplation of the Virgin Islands divorce statute. "Combatability", it may be said, is not *per se* incompatibility.

As we said in Del Peschio v. Del Peschio, [5 V.I. 461], 356 F.2d 402, 406 (1966):

> "Accordingly, in determining whether a married pair are so incompatible as to justify a divorce on that ground the inquiry is not as to the fault of either or both but rather as to whether their marital barque has so far foundered upon the rocks of disharmony and discord as to be beyond the possibility of salvage."

With respect to the second chapter of the parties' marital history—the seven-week period between defendant's return from Europe on August 5, 1965 and the separation in mid-September 1965—it cannot be gainsaid that the testimony disclosed several bitter quarrels marked by acts of violence on the part of both plaintiff and defendant. These quarrels cannot, under the prevailing circumstances, afford the basis of a finding of a state of incompatibility within the meaning and contemplation of the Virgin Islands divorce statute.

■■ These quarrels, over a brief span of time, did not establish that there existed a state of incompatibility "because of the basic unsuitability of the spouses for each other", as required under the divorce statute.

In Del Peschio v. Del Peschio, supra, we said at page 406:

> "It is to the question whether the marriage is in fact ended because of the basic unsuitability of the spouses for each other, as

678

shown by the events of their married life, rather than to the causes of the state in which they find themselves, that the court must direct its inquiry in determining whether incompatibility of temperament exists."

■ In the instant case, insofar as the second chapter of their marital history is concerned, their violent quarrels arose because of defendant's objections to plaintiff's association with the young woman of whom he was admittedly enamoured. Defendant may well have demonstrated the verity and vitality of the adage "Hell hath no fury like a woman scorned", but standing alone her conduct did not demonstrate "the basic unsuitability of the spouses for each other".

In Sachs v. Sachs, [3 V.I. 264], 155 F.Supp. 860 (D.C. V.I. 1957), aff'd on other grounds, [4 V.I. 102], 265 F.2d 31 (3 Cir. 1959), it was said at pages 862–863:

". . . it seems to this Court that what the plaintiff claims to be incompatibility is due solely to his conduct with Vivienne Francis Monopoli, and he cannot come in Court and be heard to complain in equity that he has a right to go around constantly with a woman not his wife, and that his wife has no right to complain about it, and that she therefore is incompatible."

This Court cited and approved Sachs in Shearer v. Shearer, [5 V.I. 439], 356 F.2d 391, 393 (1965), where we held that quarrels between the plaintiff and his wife arising by reason of her constant objections to his heavy drinking did not establish existence of incompatibility of temperament.

■ To award a divorce, under the prevailing circumstances, to an unfaithful husband on the ground that the righteous wrath of his betrayed wife has made them incompatible would be to reward him for marital infidelity. The Virgin Islands divorce statute cannot be construed to sanction such as ironic result.

This must be said in closing. Defendant, in addition to seeking reversal of the Judgment of Divorce, asks that we award her the legal separation which she sought below in her Cross Complaint and Answer.

■ The District Court by granting plaintiff a divorce denied defendant's prayer for a legal separation. In view of our reversal of its action, the counterclaim for a legal separation must be reinstated on remand, heard and decided.

For the reasons stated the Judgment of the District Court will be reversed and the cause remanded with directions to dismiss the plaintiff's complaint, with costs and reasonable counsel fee to the defendant, and to proceed in accordance with this opinion.