**LAWRENCE E. HODGE, Plaintiff**

**v.**

**ERNESTINE HODGE, Defendant**

Civil No. 398-1972

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 26, 1973

HOFFMAN, *District Judge*, Sitting by Designation

## MEMORANDUM OPINION

This matter came on for a hearing on February 26 and 27, 1975, for consideration of a number of motions treated separately infra. Plaintiff appeared in his own person and through his counsel, Feuerzeig & Zebedee (Henry Feuerzeig, Esq., of counsel). Defendant appeared in her own person and through her counsel, Clarice A. Bryan, Esq.

The parties were granted a divorce on a "no-fault" basis under 16 V.I.C. § 104 by a decree of Judge Young of the District Court dated May 23, 1973. The decree gave physical custody of the one minor child of the marriage to the defendant with reasonable rights of visitation, as outlined in Judge Young's memorandum opinion, to the plaintiff. The plaintiff was ordered to pay alimony in the amount of $100.00 per month and child support in the amount of $15.00 per week. In addition the decree converted the parties' tenancy by the entirety in the property at #63 Scott Free Estate into separate tenancies in common, with the defendant to have rent-free occupancy of one of the apartments therein.

This Court, in an order dated December 5, 1973, found the plaintiff in contempt of Court for failure to pay alimony and support. At that time the Court also appointed Mr. John Bensen as agent of the parties to administer the collection and distribution of rent monies from the Scott Free property and the payment of the mortgages thereon. In a further order of this Court dated March 14, 1974, it again found the plaintiff in contempt for failure to pay alimony and support, with total arrearages in the sum of $1,480.00. The plaintiff was not sanctioned for his contempt but was admonished to continue his payments as per the December 5, 1973 order. The Court also appointed Mr. John Bensen as trustee to sell the Scott Free property on the market so that the plaintiff's arrearages could be levied

against his share of the sale proceeds. In its March 14, 1974 order, the Court also modified its in-court order of March 6, 1974 which had suspended the plaintiff's visitation rights and substituted a visitation schedule which allowed six hours of visitation each Saturday.

The plaintiff appealed from this order, alleging inter alia that the Court had erred in forcing him to proceed at the March 6, 1974 hearing without the counsel of his choice. The United States Court of Appeals for the Third Circuit, in an opinion filed January 6, 1975, affirmed the March 14, 1974 order except as to its provisions for visitation, which were vacated. The Circuit Court held that visitation rights were to be governed by the March 23, 1973, memorandum opinion of Judge Young. The Circuit Court also denied a motion to reimburse the defendant-appellee for transcripts for appeal and a motion that the trustee not accept the appellant's offer to purchase the jointly-held Scott Free property. Such denials were made without prejudice to renew such motions in this Court.

## I

In a motion dated February 7, 1975, the plaintiff moves this Court to confirm the sale of the property at #63 Scott Free Estate to the plaintiff, Lawrence Hodge, and his new wife, Maria Tankenson Hodge, under a contract of sale dated June 4, 1974, between the aforementioned Lawrence and Maria Hodge and Mr. John Bensen, the court-appointed trustee of the property. Such a confirmation was required by the order of this Court dated March 14, 1974, which created the trusteeship and which ordered the sale of the property.

■■ Defendant opposes the confirmation of the sale on two grounds. First, defendant submits that the property is not being sold "on the open market" as required by the March 14, 1974, order. I find no merit in this contention:

258

the evidence clearly showed that the property was listed with a number of realtors in St. Thomas, was advertised in the local newspaper and was shown to a number of prospective buyers. In my opinion, the trustee satisfied the "open market" requirement. Secondly, the defendant argues that the plaintiff and his new wife are financially unable to perform the contract. Such a contention I find wholly irrelevant. The Court will not confirm any sale that does not confer upon the defendant in cash or its equivalent the full value of her equity in the property, plus the monies due her for alimony and support. The evidence shows that the plaintiff and his new wife plan to finance the purchase through a private savings and loan and through the government retirement fund. The financial fitness of the purchasers is the concern of the lending institutions, not of this Court. I intend to assure myself before any sale is confirmed that the purposes of the court-ordered sale are carried out: i.e., that the defendant and the plaintiff receive their fair shares of the equity in the property, and that the alimony and support arrearages are liquidated.

▮ The question now arises whether the contract of sale dated June 4, 1974 does satisfy the purposes of my order. First, let me state that I reject any contention by the plaintiff that the Court is *obligated* to confirm this sale or that such confirmation is merely pro forma or somehow not really necessary, based on the plaintiff's argument that, due to an unforeseen emergency, the trustee needed to approve the sale in order to preserve the trust property. The offer itself in Paragraph #9 provides that "Consummation of the sale will be postponed . . . until this agreement for sale has been submitted to the District Court of the Virgin Islands." Further, the Court finds that the possibility of imminent foreclosure was NOT unforeseen by this Court when it appointed Mr. Bensen as trustee to sell the property. (See transcript, Vol. III at p. 25.) In fact the evidence

clearly shows that the imminent foreclosure on the property was one of the main reasons that the Court ordered the sale. Since the terms of the trust were made at a time when foreclosure was a real possibility, it cannot be gainfully argued now that the possibility of foreclosure rendered some of the terms of the trust invalid. Likewise I find no merit in the argument that the appeal of this case deprived the trustee of the ability to get the Court's approval, thereby creating an unforeseen emergency. In fact, the appeal was prematurely noticed by plaintiff 3 days before the written order of this Court which created the trust. See Third Circuit Slip Opinion at page 4. Paragraph #5 of the March 14, 1974, order specifically withholds the "consummation" of any sale pending the appeal.

■ All parties to this purchase were aware that any sale was ultimately subject to Court approval. Even Maria Hodge, though not a party to this litigation at that time, was aware of the necessity of confirmation: Mrs. Hodge, a member of the Bar, has at times during the course of this case served as attorney for her husband. Perhaps no one is as familiar with the legal features of this case as she is. Her awareness of the necessity of confirmation is shown also by the inclusion of such a provision for confirmation in the offer, as noted supra. Such an inclusion, in my opinion, renders frivolous any claim now that, due to an emergency, such confirmation was not required to effect a sale or is merely a formality. I think that the purchasers were aware, or should have been aware, that in a judicially ordered sale, subject to judicial confirmation, the Court may refuse to confirm any sale which inflicts substantial wrong upon any interested party or which contraverts the purposes for which the sale was ordered. 47 Am.Jur. 2d 442ff. In the instant case, the sale of the Scott Free property by the trustee was ordered 1) to salvage the parties' equity in the property; 2) to permit the plaintiff to liquidate his alimony

and support arrearages and mortgage delinquencies; and 3) to provide for an otherwise fair and equitable division of the parties' interests in the property. See Order of March 14, 1974, Paragraph #3 of findings and Paragraph #3 of order.

There is no doubt that the agreement in question will allow for the liquidation of arrearages and did forestall any foreclosure. The questions remain, however, whether this contract provides for an equitable division of the parties' equity and whether confirmation would work a substantial injustice against the defendant.

I find one provision of the offer particularly questionable. Paragraph #5 of the offer provides that any rents

> . . . collected by the Trustee after the date of execution for this agreement for sale shall not affect the computation of the parties' equity on the debt encumbering the property, which sums shall be fixed as of the date of the execution of this agreement for sale, based on the figures in paragraph 2 hereof; . . . .

■ Normally the purchaser of property is not entitled to receive rents to his own benefit until he is entitled to possession, although such an arrangement *can* be made by express agreement. 92 C.J.S. 161–163. However, here it is not a question of whether such an arrangement is within the Court's *power* to ratify, but rather whether the agreement under consideration will equitably fulfill the Court's purposes by equitably protecting the defendant's interests.

■ The plaintiff's present wife, Maria Hodge, testified that Paragraph #5 was included in the offer to protect her investments in the property. One cannot question the wisdom of attempting such protection. On the other hand, the Court will not sanction the termination of defendant Ernestine Hodge's right to the benefit of rent monies received while she is still a tenant in common, especially in light of the fact that the offer *by its own terms* (see Paragraph #9 of offer) could not possibly have been "consummated" until

the appeal of the Third Circuit was heard and disposed of, a matter of seven months. While this Court in no way wishes to intimate that plaintiff's appeal was anything other than bona fide and totally within his rights, the Court must take cognizance of the fact (which plaintiff admits) that he made no alimony payments at all in the period between this Court's order in March 1974 and January 1975, thereby allowing the arrearages to increase from $1,480.00 to $2,640.00. It appears to me that the plaintiff, knowing that his arrearages would be liquidated at the closing of the sale of the Scott Free property, has simply chosen to forget about his continuing obligation to pay alimony to the defendant. The Court simply did not intend the sale mechanism to become an intentional or unintentional device for free credit, allowing plaintiff to defer payment of alimony.

Since the trustee and the prospective purchasers signed the agreement for the sale of the Scott Free property on June 4, 1974, at least $3,600.00 in rents has been collected by the trustee for the property. If I confirm this sale, I will be sanctioning an agreement that deprives the defendant of her share of these rentals, despite the fact that she is still co-owner until closing. To deprive her of the benefit of these rentals while allowing plaintiff to run up over $1,000.00 in additional alimony arrearages would, in my opinion, be unconscionable.

In a case such as this involving the court-ordered sale of trust property to one of two co-beneficiaries, I believe I should scrupulously examine such a sale before confirming, in order to assure that equity is done. The Court finds that this sale, as offered, does not do substantial equity to the defendant and therefore will not be confirmed. I note that in addition to my objections to Paragraph #5, I find the provisions of Paragraph #14 to be *solely* within the power of this Court. I would feel compelled to reject any agreement which finally fixed the equities of the par-

ties or which fixed the relative obligations of the parties as to the trustee's compensation, where the contract is submitted for confirmation on a take-it-or-leave-it, all-or-nothing basis. This Court shall be the final arbiter of the equities of the parties and the final judge of who shall bear the costs of the sale. I likewise note that this offer makes no provision for an adjustment in compensation to Ernestine Hodge for the loss of her right, granted under Judge Young's decree of May 23, 1973, and in no way abrogated since then by this Court, to live in one of the apartments of the Scott Free property rent-free, during the minority of the child of the parties, provided Ernestine does not remarry. I note that this proposed sale of Ernestine's share of her former husband and his new wife only increases Lawrence's indebtedness, rather than providing him with some measure of liquidity to allow him to meet his continuing obligations under the terms of this divorce. I will feel compelled to reject any offer from the husband to buy out his former wife's share if said offer does not provide some form of "insurance" for this particular interest of Ernestine Hodge.

Based on all the evidence presented, and on balance of all the equities involved, I hereby deny the plaintiff's motion to confirm the sale of the property at #63 Scott Free Estate to the plaintiff, Lawrence Hodge, and his wife, Maria Tankenson Hodge, under the terms of the offer of purchase dated June 4, 1974.

I am aware that Lawrence and Maria Hodge (principally, Maria Hodge) have paid in over $3,000.00 under this agreement (see Exhibit C) and have $5,500.00 on deposit with the trustee (see Exhibit 2). The deposit shall be returned, if not applied as outlined infra. As to the other monies, Mrs. Maria Hodge may choose to treat these as paid on behalf of her husband as co-tenant of the property, availing himself of that portion of Judge Young's opinion

263

of May 23, 1973, which would allow for a proportionate increase of his share of the common tenancy for monies expended to avoid foreclosure, or Mrs. Maria Hodge may choose to pursue whatever other remedies she might have against the property or the co-tenants. I would like to state for the record that I find no objection to the sale as to the adequacy of price and would urge Mr. and the present Mrs. Hodge, if they are still interested in purchasing the property, to renew their offer in the terms set out infra or to make other offers of adjustment to the defendant.

The Court candidly admits that it did not set up the trusteeship and order the sale of the property specifically for the purpose of allowing one party to buy out the other party's share: normally such a purchase can be achieved through settlement between the parties through their attorneys without recourse to the expensive process of a court-appointed trustee and a judicially ordered sale. Nonetheless, I see no reason why one party cannot buy out the other's interest, provided that the terms are fair and in accordance with this Court's orders. For the benefit of the parties and to prevent any further delays in this regard, the Court has set out in Appendix A what it believes would be a "fair price" for each party's sale in the sale of the house, based on a fair market value of $80,000.00. The figures in Appendix A are current as of February 28, 1975, and would, of course, have to be adjusted for payments made since that date.

I will confirm the offer of either party to buy, for cash or its equivalent, the share of the other party as outlined in Appendix A and would, if necessary, order the requisite conveyances to effect such a transfer. I must indicate, however, that should Lawrence Hodge seek to purchase Ernestine Hodge's share of the property, I would require some form of security, either in the form of a grantor's lien on the property or a cash bond, to secure the defendant's in-

264

terest to live in one of the apartments or its equivalent. Given the present financial resources of the plaintiff and in light of his past record of alimony delinquency, this Court would not merely convert the defendant's interest here into cash payments backed up only by the plaintiff's promise to pay. I will allow, however, for a bond to be posted, or for a lien to be had against the property on an accruing basis in the amount of the value of the rent-free entitlement, with execution on such lien to be stayed until the plaintiff's financial situation improves.

Until May 1, 1975, the trustee will abate his efforts to sell the property in order to allow for one or the other parties to tender cash for the other's share as outlined supra. Any sale shall still be subject to confirmation by this Court. Should no such tender be made within thirty days, the trustee will resume his efforts to sell the property on the open market.

## II

Plaintiff by a motion dated February 7, 1975 asks the Court to hold the defendant in contempt for failure to comply with the Court's orders as to the rights of the plaintiff to visit the minor child of the parties, Ann Hodge, age eight years. Plaintiff also moves by a motion dated February 24, 1975, that the Court grant him physical custody of the child or alternatively that the Court order a fixed schedule of visitation as outlined in the motion.

As to the motion for contempt, the Court finds that since July 1974 the defendant did not deliver the child as per my order of March 14, 1974, prior to the vacation of that order by the Third Circuit on January 6, 1975, and further that the defendant, since January 6, 1975, has not complied with the May 23, 1973, order of Judge Young which was re-instated by the Third Circuit. I also find that the plaintiff did notify the defendant of the particular dates on which

he could not receive the child. I find that the defendant wilfully disobeyed the orders of this Court and is in contempt. In light of the fact that I have now entered a temporary order of visitation rights and in view of the fact that I did not impose sanctions on the plaintiff when he was found in contempt in March 1974, I will take no punitive measures against the defendant at this time. However, both parties are hereby warned that any future findings of contempt by plaintiff or defendant will result in stiff fines or jail sentences. I will not permit the parties to continue in utter disregard of the orders of this Court.

As to the matter of a change in the custody of the minor child, I find that there has not been such a substantial change in circumstances as to warrant a change in custody. The defendant-mother's circumstances are largely unchanged since the initial award of custody. The plaintiff-father has remarried; his new wife earns a salary sizeably greater than his. But with his access to greater resources there have also come greater responsibilities: he and his new wife have an infant son; the plaintiff is attending the College in pursuit of a degree. I hold that it has not been shown that the circumstances warrant a change in custody. The plaintiff's motion to that effect is hereby denied.

With regard to the motion to change custody or define visitation rights, the Court called as its own witness Ann Hodge, the minor child. I wished to ascertain the preferences, if any, of the child as to custody and visitation. The testimony of the child was heard in chambers in the presence of only myself, the reporter who took stenographic notes and my law clerk who took longhand notes. I conducted the interview in a business suit, rather than in my robes, and the child and I were seated informally on a couch. The minor was advised that the interview was confidential and the contents were not to be divulged by her.

By these precautions, I sought to protect the privacy of the child, to eliminate the possibility of any repercussions against the child, and at the same time to protect the rights of the parties at the hearing and at any possible appeal. See Annotation: The Propriety of Court Conducting Private Interview with Child in Determining Custody, 99 ALR2d 954; see also cases cited in plaintiff's motion to change custody.

In interviewing the child, I found her to be a pleasant and open child of normal intelligence and maturity for a child of her age. I felt that the child had a basic grasp of the import of the occasion and the necessity of telling the truth. Although the Court concurred with the minor's opinion regarding custody and visitation, I wish to note that my decision is based on all the evidence presented. In considering the best interests of the child, I gave more weight to the evidence of the parents' circumstances than to the child's preferences. As it would happen, the child's preferences and my conclusion are substantially the same.

To summarize, the child indicated that she would like to live with her mother, but desired to spend more time than at present with her father; that she gets lonely at her mother's home because there are fewer children to play with; that there is more to do at her father's home, playing with other children and taking care of her infant half-brother. I should also like to note for the record that Ann indicated that each parent makes derogatory comments about the other. It seems to me that it is difficult enough for a child of tender age to understand why her father and mother can no longer live together without the parents using the child as a pawn in a game of continuing post-marital hostilities. I suggest that the mother, rather than resenting the child's contacts with the father and his relatives, should realize that in a small community such as ours such relationships are a positive experience for the child, and that

the father, rather than attempting to tear down the child's image of her mother, should realize that the mother will have the closest relationship to the child on a day-to-day basis and will be critical to her formative development. The Court strongly suggests that if the parents feel some need to continue their wranglings and hostilities that they do so through more appropriate means and that they give the child the opportunity to grow up with love and affection for both parents. I fear if the present pattern persists, neither parents nor child will be the better.

The mother will retain physical custody of the child. The father will enjoy visitation rights under the following plan:

(1) On alternate weekends during the school year commencing April 11, 1975, the plaintiff shall pick up the minor child at school on Friday afternoon and return the child to her mother's home no later than 5 p.m. on Sunday.

(2) On alternate Sundays during the school year commencing April 6, 1975, the plaintiff shall pick up the minor child at 9 a.m. at the mother's home and return the child thereto by 6 p.m.

(3) In years ending with an odd number, the plaintiff shall be entitled to custody of the child on Christmas Day, the first half of the Christmas school recess and the first half of the summer school recess; in even-numbered years, the child shall spend these periods with the defendant.

(4) In years ending with an even number, the plaintiff shall be entitled to custody of the child on the Easter weekend, the second half of the Christmas school recess and the second half of the summer school recess; in odd-numbered years, the child shall spend these periods with the defendant.

(5) Determinations of what constitutes one-half of a school recess shall be calculated accurately to the day, with

custody to begin at 9 a.m. on the first full day of entitlement.

(6) The plaintiff shall notify the defendant and her attorney in writing no less than three days in advance of weekend visitations and no less than fourteen days in advance of longer visitations if the plaintiff does not intend to take custody of the child for the period to which he is entitled.

(7) There shall be no reduction of support payments for weekend visitations; in the case of visitations in excess of three days, support payments may be reduced for the following month in the amount of $2.00 per diem.

(8) Either parent shall have the right during a period for which he or she rightfully has custody of the child to have the child examined by a physician.

(9) Neither parent shall remove the child, nor cause the child to be removed, from the Territory of the Virgin Islands without the written consent of the other party. Such consent shall not be unreasonably denied, upon the sworn affidavit of the parent seeking to take the child from the Territory that such an absence is only temporary and will not interfere with the other parent's custody rights.

## III

Based upon the arguments of counsel and the facts stipulated to in open court by both counsel, the Court hereby finds that the defendant is entitled to $90.40 from the plaintiff, which sum represents the stipulated cost of the transcripts used in the preparation of defendant-appellee's brief in the appeal of this case before the U.S. Court of Appeals for the Third Circuit (Appeal No. 74-1376). In making this award, the Court relies on Rules 39(e) and 39(a) of the Federal Rules of Appellate Procedure and on the opinion of the Third Circuit (Slip Opinion, p. 11). This

award shall be paid from the plaintiff-appellant's bond of $250.00 deposited with this Court. The balance of $159.60 shall be returned to the plaintiff by the Clerk.

## IV

With regard to all the motions considered in Sections I, II and III of this opinion, the parties shall bear their own costs and attorney's fees.

### ORDER

Upon the findings of fact, conclusions of law and reasons set forth in the 3/26/75 Memorandum it is hereby:

### ORDERED AND ADJUDGED

1. The plaintiff's motion to confirm the sale of the property at #63 Scott Free Estate, St. Thomas, under the offer of purchase dated June 4, 1974, is denied.

2. The defendant has wilfully disobeyed the orders of this Court regarding the visitation rights of the plaintiff and is adjudged to be in contempt of Court as delineated in its Memorandum Opinion dated March 26, 1975.

3. The plaintiff shall enjoy rights of visitation with the minor child Ann Hodge, as delineated in the Memorandum dated March 26, 1975.

4. Defendant is entitled to recover the sum of $90.40 from the plaintiff. Such recovery shall be made from the plaintiff's appeal bond on deposit with this Court. The Clerk of the Court shall return the balance of $159.60 to the plaintiff.

### APPENDIX A

| | |
|---|---|
| Fair market value of house | 80,000.00 |
| Less 1st mortgage | −34,011.43 |
| Less 2nd mortgage | − 8,057.32 |

| | |
|---|---|
| Equity | $37,931.25 |
| ½ each | $18,965.63 |
| *Sums due defendant in addition to equity = | $ 3,061.29 |
| **Sums due plaintiff for moneys paid in since June 4, 1974 = | $ 1,579.10 |
| Leaving net due to defendant above Equity = | $ 1,482.10 |
| Defendant's share = | $20,447.82 |
| Plaintiff's share = | $17,483.44 |

---

\* As per plaintiff's computation received March 10, 1974
\*\* ½ of monies paid by or for benefit of plaintiff since 1/4/1974