**WALLACE M. PHAIRE, Plaintiff**

v.

**SANDRA PHAIRE, Defendant**

Fam. No. 85/1979

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

March 20, 1981

MICHAEL STEWART MCLAUREN, ESQ., Kingshill, St. Croix, V.I., *for plaintiff*

MARK L. MILLIGAN, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

This matter is before the Court on defendant's Motion to Modify Final Order and plaintiff's cross motion in opposition thereto.

The parties were married in St. Croix, V.I. on October 7, 1977[1] separated in January, 1979, and have not cohabited since that time.[2] A Final Decree of Divorce by default was entered on April 5, 1979, the defendant having failed to answer, appear or otherwise defend. Subsequently, on or about August 28, 1979, the pending motion for modification was filed, defendant asserting for the first time that Genevieve Phaire, a female child, was born of the marriage of the parties, on July 20, 1979. This motion seeks a determination of paternity and an award of child support for this child. Plaintiff denied paternity and a hearing on these issues was held on August 7, 1980.

---

[1] See Findings of Fact entered April 5, 1979, Paragraph 3.

[2] See Findings of Fact entered April 5, 1979, Paragraph 10.

At the outset, this Court is constrained to note the failure of plaintiff to submit a memorandum of law, to assist the Court, although instructed to do so by the Court. A period of fifteen (15) days was granted for the submission of such memorandum because it was felt that the interests of the child demanded a reasonably speedy determination by the Court. On or about August 26, 1980, defendant submitted such a memorandum but to the date of this opinion, a period of over 200 days from the date of hearing no such memorandum has been submitted by plaintiff. Beyond the impropriety of counsel's failure to comply with the Order of this Court, it is difficult to understand counsel's indifference to the duty owed to his client.

In order to decide this case in an impartial and enlightened manner, this Court called upon counsel to assist it by submitting in writing, an exposition of the legal position each party urged the Court to adopt and citation of the authorities upon which each party relied as the foundation for such legal position. The very purpose of the order has been defeated by plaintiff's failure to comply and the broad exposure of the law which is so necessary to judicial determination has been curtailed. I am now called upon to determine this case with only one side of the coin exposed. By my own research, I have endeavored to expose the other side of the coin and to restore the balance of presentation which is so necessary to enlightened decision. Let all counsel be warned, however, that failures of this nature *will not*, in the future, be condoned and that appropriate sanctions *will* be imposed when willful failure occurs.

The first issue presented is a determination of the extent to which the April 5, 1980 Findings of Fact constitute res judicata. The particular findings which appear to be relevant to the issue presented by these cross motions are:

> 4. That there is one child born of this marriage, to wit: Wallace Austin Phaire, age 1.

> 10. That the parties separated in January, 1979 and have not cohabited since that time.

While at first blush these findings might appear to be of some significance, upon deeper consideration their import is recognized as de minimis.

The finding relative to a cessation of cohabitation is of no consequence because the specified date, January, 1979, is well within the period of gestation. The finding that one child was born of the marriage is of no consequence because it is not here attacked by the

defendant. On the contrary, defendant's position is that such finding was accurate on the date upon which it was made, but that it no longer reflects the true facts, the circumstances having been changed by the birth of the second child on July 10, 1979.

It must be remembered that the decree in this case was entered by default and that plaintiff in no way alluded to the pregnancy of the defendant. From this state of facts it is apparent that the issue of paternity of the second child was neither addressed nor decided by the Court upon the entry of the decree. In fact, it is apparent from the record in this case that, the Court was totally unaware of the impending birth of the second child at the time of the entry of the decree herein.

■■ This Court's authority to modify the decree in an appropriate case is unquestioned. 16 V.I.C. § 110. There can be no "estoppel by judgment" since the question of paternity of this child was never addressed by the Court.

The question of whether the divorce decree is res judicata under these circumstances appears to be a question of first impression in the Virgin Islands. The resolution of the problem, however, when presented to other courts has produced a uniform result.

■ A finding in a divorce decree that there were a specific number of children born of a marriage, or that no children were born of a marriage is not res judicata as to an after-born child. This proposition is supported under either of two modes of analysis.

■ First, where the divorce court did not have the issue of the paternity of the after-born child before it at the time it entered the decree, res judicata cannot be said to apply. "A decree becomes res judicata only regarding matters determined at the time the decree was rendered." Austin v. Austin, 418 P.2d 347, 350 (Okla. 1966) citing, Wheeler v. Wheeler, 414 P.2d 1, 7 (Kan. 1966). It is axiomatic that a court cannot decide an issue which has not been presented to it. As the Supreme Court of Minnesota said in considering a question similar to the one at bar:

> The only issue before the trial court in this case was whether or not grounds for divorce existed. The question of whether or not Beverly Ann was a child born of the marriage was not considered or passed upon.

Mund v. Mund, 90 N.W.2d 309, 313 (Minn. 1958).

■ Secondly, the findings are not res judicata because of the continuing power of the court to modify a divorce decree regarding

240

issues of child support, custody and maintenance. Alber v. Alber, 472 P.2d 321 (Idaho 1970) was a case of similar factual nature. There the appellant-father urged that the trial court not be permitted to exercise its jurisdiction in awarding child support. This contention was based on an Idaho statute which restricted a plaintiff to receiving, in a case where no answer was filed, relief no greater than that demanded in the complaint. IDAHO CODE § 10-704. Since the child support could not have been requested for the child subsequently born, the father contended that it was waived, and could not in a later motion, be granted. The Idaho Supreme Court, while cognizant of the requirements of IDAHO CODE § 10-704, held that the section of the Idaho Code giving the divorce court power to modify or vacate a judgment dealing with custody, care, and education of children of a marriage took precedence. IDAHO CODE § 32-705. In speaking on the matter, the court held that res judicata did not apply "where the specific issue drawn in question is that of child support." Alber, supra at 324.

The fact that a default judgment was entered in this case does not change the result. In Mund v. Mund, supra, a default was entered against the defendant father. The complaint stated that there was one child of the marriage, but the findings of the trial judge failed to mention her existence. The court held that:

> where the parents or their counsel, either through error or design, by stipulation or evidence presented in a divorce action omit mention of the fact of issue of the marriage and fail to make provision for such issue, the court under its continuing jurisdiction to modify, alter, or amend the divorce decree may correct the error and provide for the support of a child omitted in the original order.

Mund v. Mund, supra at 312. The reasoning the court there applied, regarding a living but omitted child, would certainly apply, as here, where the child is in gestation and that fact, for whatever reason, is not brought to the court's attention. This Court is satisfied, for the foregoing reasons, that the Findings of Fact are not res judicata as to the issue of child support.

The next question presented is the paternity of Genevieve Phaire. There is a presumption that a child conceived during a marriage, although born after the parents have been divorced, is legitimate. Eisenberg v. Eisenberg, 160 A.228, 230 (Pa. Super. Ct. 1932). Even though the presumption of legitimacy of a child of a

marriage is, in the language of Mr. Justice Cardozo, "one of the strongest and most persuasive known to law," In re Findley, 170 N.E. 471, (N.Y. 1930); see Sanders v. Yancy, 122 So. 2d 202, 204 (Fla. Dist. Ct. 1960), it can be overcome or rebutted by clear and convincing evidence to the contrary. Savruck v. Derby, 344 A.2d 624, 627 (Pa. Super. Ct. 1975). Accordingly, the presumption of legitimacy shifts the burden of persuasion to the putative father to establish that he did not father the child. Coffman v. Coffman, 591 P.2d 1010, 1011 (Ariz. Ct. App. 1975). The facts and evidence adduced at trial must be examined in this light to determine if the father has met his burden.

At trial both the plaintiff and defendant testified, as did the laboratory technician who monitored the blood tests administered to the family, and the Court was given the opportunity to view the child. The mother, Sandra Phaire, testified that she and Wallace Phaire, Sr. were married on October 7, 1977 and that one child, Wallace Phaire, Jr., was born during the existence of the marriage. Their marital home was a two bedroom apartment at Catherine's Rest. They shared one bedroom as husband and wife, the other was filled with spare auto parts. According to Sandra, they regularly engaged in sexual relations until they ceased cohabiting in March, 1979.[3] In fact, she testified that they engaged in sexual relations on October 7, 1978, a date which happened to be the first anniversary of their marriage and her birthday.

Wallace Phaire, Sr. contradicted the defendant by saying that although they had sexual relations about five times a week prior to the birth of their first child, Wallace Jr., they stopped sleeping in the same bed after he was born. He further stated, as evidence of non-access, that beginning in November, 1978, Sandra would stay out at night and not return until morning. Sandra, on cross examination, did not deny that she elected to take a job sometime in November which required her to stay out until 3:00 a.m.

 In general, Wallace Phaire's testimony was confusing and inconsistent regarding the dates of cohabitation and the cessation of marital relations. At best, nothing to which he testified

---

[3] The defendant asserts that they stopped living together in March, 1979, and the plaintiff states that he moved out in December, 1978 or January, 1979. The Finding of Fact (#10) entered by Judge Joseph when the divorce was granted in this case in April, 1979, recites that cohabitation ceased in January, 1979. This Court will abide by that finding since it was made at a time much closer in proximity to the actual event than the hearing on this motion. The variance in time is of little consequence in any event, since December, 1978, January and March, 1979, are all well within the period of gestation of Genevieve Phaire.

defeats or overcomes the very strong presumption that he is the father of the child. The plaintiff is proceeding on a non-access theory as his defense to paternity. The evidence of non-access must show that the father had no opportunity to engage in sexual relations with the mother during the period of gestation.[4] The evidence presented here simply does not rise to the level necessary to rebut the presumption. Instead, it shows that between October, 1978 and January, 1979, the parties cohabited and ample opportunity existed for them to engage in conjugal relations. In addition, the testimony of the laboratory technician who analyzed and reported the blood testing, Clement McGrath, supports the conclusion that Wallace, Sr. *could* be the father of Genevieve. It *does not*, on the basis of genetic blood type, exclude him from that class of men who could be her father. This evidence is *neutral in its effect* and is considered by the Court in that light. The Court finds, therefore, that the strong presumption of legitimacy is not overcome, and that Wallace Phaire, Sr. is the father of Genevieve Phaire.

The remaining question to be determined by the Court is the quantum of support, if any, which should be awarded the after-born child, Genevieve Phaire.

The only evidence adduced at the hearing relating to the quantum of support was the testimony of defendant Sandra Phaire and it stands undisputed. No purpose would be served by setting forth that testimony at length. Suffice to say that the testimony clearly supports the finding that the child is in need of support.

The evidence discloses that the needs of defendant and the two children approximate $1162.00 per month. Her income approximates $885.00[5] per month leaving a deficit of $227.00 per month.

Plaintiff has been employed as a teacher by the Department of Education and has been earning a net income of $512.00 biweekly.[6] He testified, however, that he was going on leave without pay within a short time to further his education in the field of Auto Mechanics at a cost to him of approximately $13,000 per year and that during the period of his leave his only income would be $250

---

[4] Genevieve Phaire was born on July 20, 1979. The period of gestation is approximately 9 months, or 280 days. Government v. Prince, 9 V.I. 47, 53 (Mun. Ct. 1971). That would place conception at sometime during the month of October, 1978.

[5] This sum includes the $85.00 per month ordered as support for Wallace Phaire, Jr. by the Decree entered on April 5, 1979.

[6] This converts to an annual net income of $13,312.00 and a monthly net income of $1109.34.

per month derived from the rental of an apartment which he owned. I place little credence in this testimony for the reason that the annual cost asserted is, on its face unrealistically high and for the further reason that the alleged annual cost is, almost equal to his former annual income. This, it appears to me, is more than just a coincidence.

In any event, the record clearly establishes the capability of the plaintiff to earn $13,000 per annum. It further clearly establishes his voluntary election to terminate his income by accepting leave without pay status. It is well settled that a parent may not circumvent his obligation to support his child by voluntarily reducing or terminating his income. Pencovic v. Pencovic, 287 P.2d 501, 504 (Cal. 1955) (en banc) (even on religious grounds husband may not refuse employment and avoid child support obligation); Cf. Poe v. Poe, 409 F.2d 40, 44 (3d Cir. 1969) (husband may not diminish earnings and thereby destroy wife's right to alimony); See generally, CLARK, LAW OF DOMESTIC RELATIONS, 443, 496 (1978); Annot. 18 A.L.R. 2d 1, 51.

Upon consideration of the foregoing, and based upon the established need of the defendant and constructive capability of the plaintiff, the Court finds the sum of $125.00 per month to constitute a fair and equitable award of support for the two children of the marriage.

In summary then, the defendant's Motion to Modify Final Order will be granted, the plaintiff's cross-motion in opposition will be denied and an Order will enter awarding support for the two minor children in the sum of $125.00 per month.

## ORDER AMENDING OPINION

The Opinion entered in the above entitled matter on March 18, 1981 is hereby amended as follows:

## ORDER

Line 14: The word "Defendant" shall be omitted and the word "Plaintiff" inserted in its place.