**BERTRAM INNISS, Appellant/Respondent**

**v.**

**VASHTIE INNISS, Appellee/Petitioner**

S. Ct. Civil No. 2013-0148

Supreme Court of the Virgin Islands

August 18, 2016

SAMUEL A. WALKER, ESQ., CPLS, P.A., Orlando, FL; LYDIA D. LOGIE MOOLENAAR, ESQ., Law Offices of Lydia Logie Moolenaar, St. Croix, USVI, *Attorneys for Appellant.*

CYNTHIA B. MOORE, ESQ., Legal Services of the Virgin Islands, Inc., St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (August 18, 2016)

SWAN, *Associate Justice.* Appellant, Bertram Inniss, appeals the Superior Court's decision, which concluded that his settlement payment emanating from a civil lawsuit for personal injuries he sustained in an automobile accident was marital property. The Superior Court further concluded that, since the personal injury settlement award was marital property, his spouse at the time of the injury was entitled to a portion of the settlement payment in the parties' divorce action. For the reasons explicated below, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

Bertram and Vashtie Inniss were married for 26 years. Five children were born of the union, with one child being a minor at the time of the couple's divorce. During the marriage, Bertram was injured in an automobile accident in 1998. Bertram suffered back injuries, causing him to abstain from working. During the time of Bertram's incapacitation from

273

his injuries, Vashtie and the children assisted him with his rehabilitation and attended to his needs. Prior to the divorce, Bertram filed a personal injury lawsuit seeking compensation for his injuries.

Vashtie filed for divorce on April 1, 2011. In June 2011, Bertram received a settlement payment of $100,000, which netted him approximately $34,000 after deducting for medical expenses and for attorneys' fees.

On July 8, 2013, Bertram testified at the divorce hearing that all the proceeds from the settlement payment had already been expended. He further testified that he had purchased a pickup truck for a female friend and other items that were not of benefit to Vashtie. Bertram argued that the proceeds of the personal injury settlement should not be considered marital property because the settlement payment was for his own personal pain and suffering.

In response, Vashtie claimed that the personal injury settlement payment was marital property in which she had an interest because the accident and recovery occurred during the marriage. She testified that Bertram did not work for approximately six months due to his injuries, and during that time, she cared for him and accompanied him to Puerto Rico for medical treatment.

On December 2, 2013, the Superior Court found that the settlement payment was marital property and entered an order memorializing that finding on December 4, 2013. Vashtie was awarded $3,468.86, which is 10% of the payment Bertram received after deducting his litigation costs and medical expenses. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012). Here, the Superior Court entered its order on December 4, 2013, and the notice of appeal was timely filed on December 30, 2013. Therefore, we have jurisdiction over this appeal.

## III. STANDARD OF REVIEW

■ The standard of review for this Court's examination of the trial court's application of law is plenary, and its findings of fact are reviewed

for clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2011); *Blyden v. People*, 53 V.I. 637, 646-47 (V.I. 2010). "[T]he appellate court must accept the factual determination of the fact finder unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007) (some internal quotation marks and citation omitted). The Superior Court's distribution of marital property in a divorce action is reviewed for abuse of discretion. *Martin v. Martin*, 58 V.I. 620, 625 (V.I. 2013).

## IV. DISCUSSION

### A. The Analytic Approach Represents the Soundest Rule in the Virgin Islands for Determining Whether a Personal Injury Settlement Payment, or Any Portion Thereof, is Marital Property Subject to Equitable Division Upon Dissolution of a Marriage.

Bertram argues that his personal injury settlement payment should be considered separate property and not marital property within the trial court's jurisdiction and subject to equitable distribution. He asserts that his settlement payment was for his pain and suffering and, therefore, is his personal property under the analytic approach to determining whether a personal injury settlement is marital property.

The Superior Court has jurisdiction, pursuant to section 109 of title 16 of the Virgin Islands Code, to equitably distribute marital property. *Garcia v. Garcia*, 59 V.I. 758, 778 (V.I. 2013). While 16 V.I.C. §§ 101 through 111 govern divorce and annulment and 16 V.I.C. §§ 61 through 71 define the respective rights and duties of the parties to a marriage, no provision of the Virgin Islands Code provides any factors or test for determining whether a personal injury settlement payment is personal property of the injured spouse or marital property subject to division.[1]

■ Title 16 section 109(a)(7) of the Virgin Islands Code grants the Superior Court jurisdiction to equitably distribute marital property during

---

[1] On December 19, 2014, Act No. 7702, § 1 implemented a provision defining marital property. That definition does not govern this case, however, because the statute was amended after the judgment in this matter was entered.

a divorce proceeding. *Garcia*, 59 V.I. at 778.[2] While, at the time of the proceedings in this case, the Virgin Islands Code failed to define marital property, it did provide a definition of separate property of a spouse. V.I. CODE ANN. tit. 16, § 68. From this definition and the complimentary exemption of such property from liability for the debts of the husband, 16 V.I.C. § 69, the judiciary has fashioned a definition of marital property that is consistent with the generally accepted legal definition of marital property and the intent of the legislature, as shown in sections 68 and 69, to segregate a spouse's personal property (not subject to distribution in a divorce proceeding) from that of the parties' marital property (subject to distribution in a divorce proceeding).

■ *Gimenez v. Curran*, 1 V.I. 386, 387-88 (D.V.I. 1937), relying on sections 1 and 2 of Chapter 14 of Title II of the 1921 Code,[3] which is the source of 16 V.I.C. §§ 68 and 69, is the earliest case in the courts of the Virgin Islands providing an understanding of what constitutes marital property versus individual property of a spouse. Under sections 1 and 2 of Chapter 14 of the 1921 Code, the property a wife brought into a marriage was her personal property, just as was property acquired by a wife during the marriage through gift, devise, or inheritance. Additionally, any property acquired by a wife "by her own labor," (e.g., money earned through the wife's needle point work), was her personal property. *Id.* at 389. Sections 68 and 69 of title 16 incorporated sections 1 and 2 and have the same overall meaning and intent as sections 1 and 2 of chapter 14 of

---

[2] *See generally Charles v. Charles*, 788 F.2d 960, 963-67 (3d Cir. 1986) (discussing change from fault-based to non-fault-based dissolution of marriages); *Hendry v. Hendry*, 14 V.I. 610, 614-17 (V.I. Super. Ct. 1978) (discussing the evolution of the law of divorce in the Virgin Islands).

[3] "Chapter Fourteen. Of the Property of Married Women." provided as follows:

> Section 1. — The property and pecuniary rights of every married woman at the time of her marriage or afterwards acquired by gift, devise, or inheritance shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey or devise the same by will to the same extent and in the same manner that her husband can property belonging to him.
>
> Section 2. — All property, either real or personal, acquired by any married woman during coverture by her own labor shall not be liable for the debts, contracts, or liabilities of her husband, but shall in all respects be subject to the same exemptions and liabilities as property owned at the time of her marriage or afterward acquired by gift, devise or inheritance.

Code 1921, Title II, ch. 14, §§ 1, 2.

the 1921 Code. Section 68 provides as follows:

> The property and pecuniary rights of every [spouse] at the time of . . . marriage or afterwards acquired by gift, devise, or inheritance shall not be subject to the debts or contracts of [the other spouse], and [the spouse] may manage, sell, convey or devise the same by will to the same extent and in the same manner that [the other spouse] can property belonging to him [or her].

16 V.I.C. § 68; *see* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88; *Garcia*, 59 V.I. at 778 n.4 (explanation for alterations). However, as *Gimenez* makes clear, gifts to both parties (e.g., furniture the wife's brother had given the parties in return for providing him room and board) are marital property. 1 V.I. at 390. Finally, general use by all members of the household is relevant to determining if property is marital property. *Id.*

The Virgin Islands' abandonment of the law of community property demonstrates a public policy that further supports a definition of marital property that recognizes the source (e.g., work, inheritance, gift) of the asset in question. Indeed, the attorney general's opinion of December 2, 1939, informs that "where the parties were married prior to 1921 all their property is community property and as such each is owner of one half of the property." 1 V.I. Op. Att'y Gen. 104; *see generally In re Estate of Sebastian*, 2 V.I. 38, 41-45 (D.V.I. 1942) (explaining the law of community property). Therefore, before the Legislature, in 2014, amended 16 V.I.C. § 109 to provide a definition of marital property, marital property was defined as property, real or personal, acquired during the marriage through the joint efforts of both spouses, whether through work or through support of the working spouse, that is meant for general household use, household betterment, and/or use and enjoyment between the spouses.[4] *Fuentes v.*

---

[4] *See Allen v. Allen*, 118 F. Supp. 2d 653, 658 (D.V.I. App. Div. 2000) ("[T]he trial court's findings should also state whether [a spouse's] alleged initial down payment of $30,000.00 in the marital homestead was money accumulated during the marriage and, thus, marital property, or whether the money was traceable to [that spouse] from an asset or money acquired before the marriage, or from an inheritance during the marriage, in which case the latter would be considered [that spouse's] money."); *Ayer v. Ayer*, 9 V.I. 371, 380-81 (D.V.I. 1973) ("I do see a need to distinguish between investment acquisitions stemming from inheritance and family gifts and those acquisitions attributable to work and efforts of one of the **partners of the marriage** during the marital cohabitation." (emphasis added)); *Pena v. Pena*, 8 V.I. 612,

*Fuentes (Fuentes III)*, 247 F. Supp. 2d 714, 717 (D.V.I. App. Div. 2003) ("[A]ny property acquired or accrued through the direct or indirect contributions of either party *during the marriage* — regardless of when the benefit from such contributions actually vests — is deemed the joint property of the marital partnership subject to equitable distribution upon divorce." (emphasis in original)).

■ ■ As such, property is either personal property of one of the spouses or marital property; and the determination of which property is personal and which is marital is based on provable ownership. *Morris*, 20 V.I. at 254 (citing 16 V.I.C. § 109(4)). Where a party fails to prove ownership of the property in question, the property is considered marital property owned in equal shares by the spouses and subject to distribution by the trial court. *Id.*[5]

---

618 (D.V.I. 1971) ("The Wheel of Fortune Property was in defendant's name at the time of this marriage, although since that time, under plaintiff's direction apparently, substantial improvements have been effected, and she claims that mortgage payments on that property have been and continue to be made from the rental income of the Peter's Rest property and from her personal funds. Thus, this property cannot be treated as a sole and separate asset of defendant, but must rather be considered at least partially a marital asset."); *Fuentes v. Fuentes (Fuentes II)*, 41 V.I. 86, 94 (V.I. Super. Ct. 1999) ("It is public policy in the Virgin Islands to promote marriage as a partnership by designating the products born of the marital union as marital property."); *Roberts v. Roberts*, 26 V.I. 92, 94 (V.I. Super. Ct. 1991) ("[T]he parties contributed equally to the construction and maintenance of the house. While [one spouse] did not actually do the work, [that spouse] did invest money in the construction. In addition, her mother gave the parties $1,500.00 to complete the roof, and her father, ... a retired contractor, instructed [the spouse performing the work] in the performance of the work. The Court finds that the contributions of the parties are substantially equal, so that they each have a 50 percent equitable interest in the dwelling."); *Laurent v. Laurent*, 15 V.I. 409, 412 (V.I. Super. Ct. 1978) ("The joint assets of the parties have been acquired by mutual effort during the entire course of their marriage."); *Kirby v. Kirby*, 14 V.I. 601, 610 (V.I. Super. Ct. 1978) ("The uncontroverted testimony of the defendant that the original intention of the parties was to construct the ... dwelling for rental purposes would indicate, at the least, the intent of both parties to improve the property for their mutual benefit."); *Rogers*, 14 V.I. at 259 n.5 ("Even assuming that the land was purchased solely with the [spouse's] funds, it was purchased at a time and with an understanding that the land, and a boat that was purchased by the [other spouse], both would be for the benefit of both of the parties."); *cf. Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 393 (D.V.I. App. Div. 2003) ("The court's authority to distribute property in a divorce action is limited to two types of marital property: personal property acquired during the marriage and only that real property utilized as the marital homestead."); *see generally*, *Julien v. Julien*, Fam. No. D148/1988, 1989 V.I. LEXIS 6, **4-7 (V.I. Super. Ct. 1989) (discussing both financial and non-financial contributions to marital assets and how they should be equitably distributed).

[5] This is in contrast to a presumption, "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts. A presumption

■ Having exhaustively reviewed this Court's precedent addressing matters related to divorce,[6] no case addressing this issue was found. Therefore, the Court will conduct an analysis under *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011), a "Banks Analysis," to determine what common law rule should govern the determination of whether a personal injury settlement payment is marital property or separate property of the spouse who suffered the injury. *Garcia*, 59 V.I. at 782 n.7; *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 396 (V.I. 2014) (conducting a Banks Analysis to determine whether the common law doctrine of assumption of the risk should be incorporated into the common law of the Virgin Islands even though section 1451 of title 5 addresses comparative negligence).[7] This endeavor requires that the

---

shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption." BLACK'S LAW DICTIONARY 1304 (9th ed. 2009). If the Virgin Islands employed a presumption that property acquired during a marriage is marital property, all property acquired during the marriage would, at the outset of any divorce proceeding, be presumptively a marital asset subject to distribution. This is not what is provided for in the Virgin Islands Code. Instead, the parties to a divorce must prove their individual ownership of property and must prove the extent of their equitable share of marital property to establish his or her right to distribution. Where a party fails to prove individual ownership, the trial court, in the absence of such provable ownership, treats any property not so proven to be the personal property of one of the spouses as marital property owned equally by the spouses and subject to distribution. *Morris*, 20 V.I. at 254; *e.g.*, *Jacobs v. Jacobs*, 408 F. Supp. 846, 850, 12 V.I. 539 (D.V.I. 1976) ("Inasmuch as both [spouses] each stated that they alone made the payments, I must reluctantly credit each party with one-half of the total payments made."); *see also Corneiro v. Simmonds-Corneiro*, 60 V.I. 125, 131 (V.I. Super. Ct. 2014) (quoting *Morris*, 20 V.I. at 254). Any precedent to the contrary is rejected. *E.g.*, *Felix v. Felix*, 39 V.I. 39, 42 (V.I. Super. Ct. 1998).

[6] *Engeman v. Engeman*, 64 V.I. 669 (V.I. 2016); *Edney v. Edney*, 64 V.I. 661 (V.I. 2016); *Rodriguez v. Rodriguez-Ramos*, 64 V.I. 447 (V.I. 2016); *Hamed v. Hamed*, 63 V.I. 529 (V.I. 2015); *Arellano v. Rich*, S. Ct. Civ. No. 2012-0096, 2013 V.I. Supreme LEXIS 70 (V.I. Oct. 7, 2013) (per curiam); *Garcia*, 59 V.I. 758; *Jung v. Ruiz*, 59 V.I. 1050 (V.I. 2013); *Martin*, 58 V.I. 620; *Berrios-Rodriguez v. Berrios*, 58 V.I. 477 (V.I. 2013); *Etienne v. Etienne*, 56 V.I. 686 (V.I. 2012); *Wessinger v. Wessinger*, 56 V.I. 481 (V.I. 2012); *Harvey v. Christopher (Harvey II)*, 55 V.I. 565 (V.I. 2011); *Bradford v. Cramer*, 54 V.I. 669 (V.I. 2011); *Martin v. Martin*, 54 V.I. 379 (V.I. 2010); *Harvey v. Christopher (Harvey I)*, S. Ct. Civ. No. 2007-115, 2009 V.I. Supreme LEXIS 54 (V.I. 2009) (per curiam).

[7] While this Court will often remand to the Superior Court for it to perform the Banks Analysis in the first instance, here the five years that have already elapsed since the parties in this case began divorce proceedings leads us to conclude that judicial economy and fairness to the parties weigh in favor of this Court conducting the study of these issues applying the "Banks Factors." *See, e.g.*, *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603-04 (V.I. 2014) (collecting cases).

Court conduct a three-part analysis to determine the soundest rule for the Virgin Islands. *Hamed v. Hamed*, 63 V.I. 529, 535 (V.I. 2015). First, the Court must consider whether the common law rule has ever been applied by any of the courts of the Virgin Islands, past or present. *Machado*, 61 V.I. at 380. Second, the Court must consider what the majority of jurisdictions in the country have adopted as a relevant rule. *Id.* Third, the Court must determine what rule is the soundest rule for the Virgin Islands; this is the most important consideration. *Id.*

There are two predominant methods of apportioning and categorizing personal injury payments and settlements as either marital property for equitable distribution at the time of the dissolution of a marriage, on one hand, or separate property, on the other. They are the "Analytic Approach" and the "Mechanistic Approach."[8]

### 1. Factor One-Case Law From the Courts of the Virgin Islands

In conducting a thorough review of all the past precedent to address matters relating to marital dissolution (interpreting Virgin Islands law), we examined the decisions of the Superior Court (i.e., decisions of the former police courts, municipal courts, and territorial court),[9] the District

---

[8] The third approach, the "Unitary Approach," categorizes the settlement payment as entirely separate from marital property. "Under th[is] approach, none of the recovery for personal injuries received during marriage is considered marital property; the proceeds are not considered as being 'acquired' during marriage because the recovery arises from circumstances entirely unrelated to any marital initiative to acquire assets." *Newborn v. Newborn*, 133 Md. App. 64, 754 A.2d 476, 489 (Ct. Spec. App. 2000) (citation omitted). New York has adopted this approach via statute, which explicitly designates all personal injury payments as separate property. N.Y. DOM. REL. LAW § 236(B)(1)(d)(2) (McKinney 2010); *accord Fries v. Fries*, 288 N.W.2d 77, 81 (N.D. 1980). Hawaii and Iowa apply unique approaches in light of their statutes. *See generally Collier v. Collier*, 8 Haw. App. 28, 791 P.2d 725 (1990); *In re Marriage of McNerney*, 417 N.W.2d 205, 207-09 (Iowa 1987).

[9] *E.g., Edney v. Edney*, No. SX-05-DI-104, 2014 V.I. LEXIS 98 (V.I. Super. Ct. Oct. 7, 2014); *Francis v. Wright-Francis*, 61 V.I. 13 (V.I. Super. Ct. 2014); *Lewit v. Lewit*, 52 V.I. 118 (V.I. Super. Ct. 2009); *Petrohan v. Petrohan*, 48 V.I. 245 (V.I. Super. Ct. 2007); *Malpere v. Malpere*, 46 V.I. 118 (V.I. Super. Ct. 2004); *Fuentes v. Fuentes (Fuentes I)*, 38 V.I. 29 (V.I. Super. Ct. 1997); *Hamilton v. Hamilton*, 38 V.I. 3 (V.I. Super. Ct. 1996); *Prosser v. Prosser (Prosser I)*, 33 V.I. 32 (V.I. Super. Ct. 1995); *Isaac v. Isaac*, 25 V.I. 36 (V.I. Super. Ct. 1990); *Walter v. Walter*, Fam. No. D209/1986, 1989 V.I. LEXIS 3 (V.I. Super. Ct. Aug. 23, 1989); *Pfister v. Pfister*, 23 V.I. 3 (V.I. Super. Ct. 1987); *Creque v. Creque*, 19 V.I. 408 (V.I. Super. Ct. 1983); *Gumbs v. Gumbs*, 14 V.I. 550 (V.I. Super. Ct. 1978); *Jorgensen v. Jorgensen (Jorgensen II)*, 13 V.I. 427 (V.I. Super. Ct. 1977).

Court for the District of the Virgin Islands (i.e., decisions of both the trial and the appellate divisions),[10] and the United States Court of Appeals for the Third Circuit.[11] Some cases adopting common law doctrines were found.[12] A couple cases were appealed to the United States Supreme

---

[10] *E.g., Grey v. Grey*, 50 V.I. 803 (D.V.I. App. Div. 2008); *In re Custody & Control of Murphy*, 120 F. Supp. 2d 517 (D.V.I. App. Div. 2000); *Prosser v. Prosser (Prosser IV)*, 40 F. Supp. 2d 663, 40 V.I. 241 (D.V.I. App. Div. 1998); *Prosser v. Prosser (Prosser III)*, 921 F. Supp. 1428, 34 V.I. 139 (D.V.I. App. Div. 1996); *Prosser v. Prosser (Prosser II)*, 907 F. Supp. 906, 33 V.I. 115 (D.V.I. App. Div. 1995); *Marsh v. Marsh*, 33 V.I. 102 (D.V.I. App. Div. 1995); *Gov't of the V.I. ex rel. Anthony v. Anthony*, 29 V.I. 201 (D.V.I. App. Div. 1994); *Barbel v. Barbel*, D.C. No. 86-520, 1988 U.S. Dist. LEXIS 18433 (D.V.I. App. Div. Apr. 21, 1988) (unpublished); *Seraphin v. Seraphin*, Civ. No. 1985/133, 1987 U.S. Dist. LEXIS 2445 (D.V.I. Mar. 27, 1987) (unpublished); *Mulrain v. Mulrain*, 15 V.I. 149 (D.V.I. 1979); *Johnson v. Johnson*, 14 V.I. 466 (D.V.I. 1977); *Todman v. Todman (Todman I)*, 13 V.I. 599 (D.V.I. 1977); *Hodge v. Hodge (Hodge G.O. 1)*, 13 V.I. 561 (D.V.I. 1977); *Jorgensen v. Jorgensen (Jorgensen I)*, 12 V.I. 491 (D.V.I. 1976); *Knight v. Knight*, 13 V.I. 169 (D.V.I. 1976); *Smith v. Smith (Smith II)*, 12 V.I. 512 (D.V.I. 1976); *Crooks v. Crooks*, 12 V.I. 509 (D.V.I. 1976); *Goodman v. Goodman (Goodman I)*, 13 V.I. 3 (D.V.I. 1976); *Doumeng v. Doumeng*, 12 V.I. 310 (D.V.I. 1975); *Erving v. Erving*, 12 V.I. 271 (D.V.I. 1975); *Hodge v. Hodge (Hodge L.E. 1)*, 12 V.I. 255 (D.V.I. 1973); *Smith v. Smith (Smith I)*, 337 F. Supp. 475, 8 V.I. 633 (D.V.I. 1972); *Targia v. Targia*, 8 V.I. 608 (D.V.I. 1971); *Friedland v. Friedland*, 295 F. Supp. 237, 7 V.I. 137 (D.V.I. 1968); *Colby v. Colby*, 283 F. Supp. 150, 6 V.I. 362 (D.V.I. 1968); *Gov't of the V.I. v. Lorillard (Lorillard I)*, 5 V.I. 121 (D.V.I. 1965); *Sachs v. Sachs (Sachs I)*, 155 F. Supp. 860, 3 V.I. 264 (D.V.I. 1957); *Bredin v. Bredin*, 140 F. Supp. 132, 3 V.I. 198 (D.V.I. 1956); *Alton v. Alton (Alton I)*, 121 F. Supp. 878, 2 V.I. 282 (D.V.I. 1953); *Quinones v. Castaigns*, 2 V.I. 134 (D.V.I. 1950); *Christian v. Christian*, 1 V.I. 399 (D.V.I. 1937); *Nielsen v. Nielsen*, 1 V.I. 391 (D.V.I. 1937).

[11] *E.g., Prosser v. Prosser (Prosser V)*, 186 F.3d 403 (3d Cir. 1999); *Stridiron v. Stridiron*, 698 F.2d 204, 19 V.I. 642 (3d Cir. 1983); *Francois v. Francois*, 599 F.2d 1286, 16 V.I. 130 (3d Cir. 1979); *Todman v. Todman (Todman II)*, 571 F.2d 149, 15 V.I. 518 (3d Cir. 1978); *Lee v. Lee*, 537 F.2d 762, 13 V.I. 351 (3d Cir. 1976); *Barrows v. Barrows*, 489 F.2d 661, 11 V.I. 129 (3d Cir. 1974); *In re Reed*, 447 F.2d 814, 8 V.I. 368 (3d Cir. 1971); *Paiewonsky v. Paiewonsky*, 446 F.2d 178, 8 V.I. 421 (3d Cir. 1971); *Perrin v. Perrin*, 408 F.2d 107, 7 V.I. 21 (3d Cir. 1969); *Schlesinger v. Schlesinger*, 399 F.2d 7, 6 V.I. 671 (3d Cir. 1968); *Korn v. Korn*, 398 F.2d 689, 6 V.I. 296 (3d Cir. 1968); *Shearer v. Shearer*, 356 F.2d 391, 5 V.I. 439 (3d Cir. 1965); *Ornberg v. Ornberg*, 314 F.2d 206, 4 V.I. 392 (3d Cir. 1963); *Crawford v. Crawford*, 254 F.2d 113, 3 V.I. 649 (3d Cir. 1958); *Granville-Smith v. Granville-Smith (Granville-Smith I)*, 214 F.2d 820, 3 V.I. 519 (3d Cir. 1954); *Burch v. Burch (Burch II)*, 205 F.2d 115, 2 V.I. 596 (3d Cir. 1953); *Burch v. Burch (Burch I)*, 195 F.2d 799, 2 V.I. 559 (3d Cir. 1952).

[12] *E.g., Charles*, 788 F.2d at 965 n.13 (adopting common law definitions of "equitable" and "equity" (citing BLACK'S LAW DICTIONARY, 482 (5th Cir. 1979)); *Id.* at 967 (24 AM. JUR. 2D *Divorce and Separation* §§ 643, 927); *Hodge v. Hodge (Hodge L.E. 2)*, 507 F.2d 87, 92, 11 V.I. 470 (3d Cir. 1975) (adopting common law rule that denial of visitation is a prohibited sanction for failing to make support and maintenance payments); *Bloch v. Bloch (Bloch I)*, 473 F.2d 1067, 1070, 9 V.I. 554 (3d Cir. 1973) (recognizing valid common law marriages entered into in other jurisdictions); *Poe v. Poe*, 409 F.2d 40, 43-44, 7 V.I. 30 (3d Cir. 1969)

Court.[13] One case even involved the courts being called upon by a celebrity to enforce a foreign divorce decree.[14] While many cases citing and relying upon various provisions of the Restatements of Laws were found,[15] none adopted any rule governing the issue under consideration. Therefore, this factor is neutral in the analysis.

---

(adopting the equitable doctrine that a spouse cannot through purposeful action that increases financial obligations thereby reduce what is equitably owed to the other spouse (citing 2 FREEDMAN, LAW OF MARRIAGE AND DIVORCE IN PENNSYLVANIA §§ 429, 432, 465, 790 (1957); DE FUNIAK, PRINCIPLES OF COMMUNITY PROPERTY (1943); CLARK, LAW OF DO- MESTIC RELATIONS 443 (1968))); *Bishop v. Bishop (Bishop II)*, 257 F.2d 495, 3 V.I. 655 (3d Cir. 1958) (adopting the doctrine of laches and citing 19 AM. JUR., *Equity* §§ 469, 472, 476, 478; 30 C.J.S. *Equity* §§ 94, 97); *Armstrong*, 266 F. Supp. 2d at 393, 395 n.8 (20 AM. JUR. 2D *Cotenancy and Joint Ownership* § 3; 41 C.J.S. *Husband & Wife* § 105); *In re Khalil*, No. 2001/183, 2003 U.S. Dist. LEXIS 6229 (D.V.I. App. Div. 2003) (unpublished) (52 AM. JUR. 2D *Marriage* § 32); *Bishop v. Bishop (Bishop I)*, 152 F. Supp. 4, 10, 3 V.I. 250 (D.V.I. 1957) (adopting the doctrine of laches and relying on 30 C.J.S. *Equity* § 116); *Thompson v. Thompson*, 64 V.I. 71 (V.I. Super. Ct. 2016); *Slack v. Slack*, 62 V.I. 366 (V.I. Super. Ct. 2015) (adopting common law test for determining validity of ante-nuptial agreements); *Corneiro*, 60 V.I. at 129 nn. 5-7 (adopting through common law definitions for "life estate" "fee simply absolute" and "remainder"); *Dysart v. Dysart*, 45 V.I. 118 (V.I. Super. Ct. 2002) (holding that pre-nuptial (a.k.a. ante-nuptial) agreements are valid and not in contravention of public policy in the Virgin Islands); *S.B. v. J.B.*, 34 V.I. 61 (V.I. Super. Ct. 1996) (52 AM. JUR. 2D *Marriage* § 36); *Dubery v. Dubery*, 24 V.I. 54, 58 (V.I. Super. Ct. 1988) (adopting common law doctrine of *res judicata*); *Watlington v. Canton*, 18 V.I. 203, 207-08 (V.I. Super. Ct. 1982) (adopting common law doctrine of laches); *Maharaj v. Looknanan*, 18 V.I. 134, 141 (V.I. Super. Ct. 1982) (2 C.J.S. *Adverse Possession* § 37, at 697); *Phaire v. Phaire*, 17 V.I. 236, 241-42 (V.I. Super. Ct. 1981) (adopting common law presumption that a child conceived during the marriage is a child of the marriage); *id.* at 244 (adopting common law rule that a spouse cannot defeat support and maintenance obligations through purposeful action that increases financial obligations (citing CLARK, *supra* at 443, 496)); *Towers v. Towers*, 16 V.I. 209, 223 n.22 (V.I. Super. Ct. 1979) (C.J.S. *Divorce* § 319; 59 AM. JUR. 2D *Parent and Child* §§ 50-52); *Kirby*, 14 V.I. at 609 n.9 (V.I. Super. Ct. 1978) (41 C.J.S. *Husband & Wife* § 299, at 300).

[13] *E.g., Granville-Smith v. Granville-Smith (Granville-Smith II)*, 349 U.S. 1, 75 S. Ct. 553, 99 L. Ed. 773, 3 V.I. 701 (1955); *Alton v. Alton (Alton II)*, 347 U.S. 610, 74 S. Ct. 736, 98 L. Ed. 987, 3 V.I. 699 (1954).

[14] *E.g., Cox v. Cox*, 457 F.2d 1190, 8 V.I. 543 (3d Cir. 1972) (child custody dispute between Yoko Ono and her first husband).

[15] *E.g., Hodge v. Hodge (Hodge J.S. 2)*, 621 F.2d 590, 592, 17 V.I. 623 (3d Cir. 1980) (citing RESTATEMENT OF JUDGMENTS §§ 7, 10; RESTATEMENT (SECOND) OF JUDGMENTS § 15); *Dyndul v. Dyndul (Dyndul II)*, 620 F.2d 409, 412, 17 V.I. 623 (3d Cir. 1980) (citing RESTATEMENT (SECOND) OF JUDGMENTS §§ 41, 68); *Francois*, 599 F.2d at 1291-93 & nn.2-3 (citing RESTATEMENT OF CONTRACTS §§ 497-98, 1627B; RESTATEMENT OF RESTITUTION § 166; RESTATEMENT (SECOND) OF TRUSTS § 2); *Dyndul v. Dyndul (Dyndul I)*, 541 F.2d 132, 133 n.2, 13 V.I. 376 (3d Cir. 1976) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS

## 2. Factor Two- Majority Approach

■ The Analytic Approach requires "an evaluation of the purpose of the compensation in the determination of the character of the award or settlement as marital or personal." *Tramel v. Tramel*, 740 So. 2d 286, 289 (Miss. 1999). Under this approach, the portion of the settlement allocated to pain and suffering and loss of future earnings after the marriage is dissolved is categorized as personal and, therefore, separate property. However, compensation for lost wages, medical expenses, lost earning capacity for that part of the marriage for which the spouse was disabled, and compensation to the non-injured spouse for loss of services or loss of consortium are considered marital property. *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430, 435-36 (1986). Essentially, the personal injury settlement or jury award is classified based on what it is designed to replace. Thus, compensation for pain and suffering, loss of limb, disfigurement, etc. is considered individual property, even though the

§ 102); *Bloch I*, 473 F.2d at 1070 (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 123, 134; RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 283); *Cox*, 457 F.2d at 1194-97 (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 25-26); *Bergen v. Bergen*, 439 F.2d 1008, 1012, 8 V.I. 336 nn.6-7 (3d Cir. 1971) (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 22, 26, 79); *Gov't of the V.I. v. Lorillard (Lorillard II)*, 358 F.2d 172, 176, 5 V.I. 483 (3d Cir. 1966) (citing RESTATEMENT OF CONFLICTS OF LAWS § 116, 435, 464; RESTATEMENT OF JUDGMENTS § 41); *Del Peschio v. Del Peschio*, 356 F.2d 402, 5 V.I. 461, 465 (3d Cir. 1965) (citing RESTATEMENT OF JUDGMENTS § 74); *Sachs v. Sachs (Sachs II)*, 265 F.2d 31, 34, 4 V.I. 102 (3d Cir. 1959) (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 116, 464); *Berger v. Berger*, 210 F.2d 403, 405, 3 V.I. 477 (3d Cir. 1954) (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 115-16, 23); *Alton II*, 207 F.2d at 673 n.18, 676 n.29 (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 43, 110); *Armstrong*, 266 F. Supp. 2d at 393, 395 n.8 (citing RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES §§ 4.1, 6.1; RESTATEMENT (SECOND) OF PROPERTY § 31.1); *Hodge v. Hodge (Hodge J.S. 1)*, 15 V.I. 154, 166, 173 (D.V.I. 1979) (citing RESTATEMENT OF JUDGMENTS § 10; RESTATEMENT OF CONTRACTS § 94; RESTATEMENT (SECOND) OF CONTRACTS §§ 76, 76B, 94; RESTATEMENT (SECOND) OF TRUSTS §§ 28-29, 167, 170, 172, 176, 188, 191, 244, 245, 330-33, 335-36, 345, 411); *Bloch v. Bloch (Bloch II)*, 10 V.I. 337, 342 (D.V.I. 1973) (citing RESTATEMENT OF RESTITUTION § 160); *De Pinto v. De Pinto*, 6 V.I. 179, 183-84 (D.V.I. 1965) (citing RESTATEMENT OF CONFLICTS OF LAWS §§ 77, 116, 146, 457; RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 27, 77, 79); *Corneiro*, 60 V.I. at 129 nn.5-7 (citing RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 4.1); *Dysart*, 45 V.I. at 128 (citing RESTATEMENT (SECOND) OF CONTRACTS § 175); *Hanley v. Hanley*, 26 V.I. 116, 121-22 (citing RESTATEMENT (SECOND) OF JUDGMENTS §§ 24, 27); *Brandy v. Brandy*, 21 V.I. 267, 273 (V.I. Super. Ct. 1985) (citing RESTATEMENT OF RESTITUTION § 148); *Kirby*, 14 V.I. at 609 (citing RESTATEMENT (SECOND) OF TRUSTS § 404; RESTATEMENT OF TRUSTS § 404); *Rogers*, 14 V.I. at 259 n.5 (citing RESTATEMENT (SECOND) OF TRUSTS §§ 442-43).

payment is received during the marriage. *See, e.g., Van de Loo v. Van de Loo*, 346 N.W.2d 173, 176 (Minn. Ct. App. 1984) ("We are persuaded that the purpose of the recovery rather than the timing of the recovery controls its characterization."); *Heslop v. Heslop*, 967 S.W.2d 249, 254 (Mo. Ct. App. 1998) ("In applying the analytic method we focus on what the award was designed to replace."). This approach has been adopted by 34 jurisdictions in the United States.[16]

The "Mechanistic Approach" (sometimes referred to as the "Literal Approach") focuses on the time of the injury and the recovery to determine its classification. *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447, 452 (1986); *In re Marriage of Dettore*, 86 Ill. App. 3d 540, 408 N.E.2d

---

[16] *E.g.*, Alabama (*Smith v. Smith*, 8 So. 3d 1007, 1009 (Ala. Civ. App. 2008)); Alaska (*Bandow v. Bandow*, 794 P.2d 1346, 1348 (Alaska 1990)); Arizona (*Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812, 814 (1980)); Colorado (*In re Marriage of Smith*, 817 P.2d 641, 643 (Colo. Ct. App. 1991)); Delaware (*Bleeker v. Bleeker*, No. CV96-06717, 1999 Del. Fam. Ct. LEXIS 36 (Del. Fam. Ct. Apr. 19, 1999) (unpublished)); Florida (*Weisfeld v. Weisfeld*, 545 So. 2d 1341, 1345-46 (Fla. 1989)); Georgia (*Dees v. Dees*, 259 Ga. 177, 377 S.E.2d 845, 846-47 (1989)); Idaho (*Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566, 570-72 (1974)); Indiana (*Beckley v. Beckley*, 822 N.E.2d 158, 162 (Ind. 2005)); Kansas (*In re Marriage of Buetow*, 27 Kan. App. 2d 610, 3 P.3d 101, 103-04 (2000)); Kentucky (*Weakley v. Weakley*, 731 S.W.2d 243, 245 (Ky. 1987)); Louisiana (*Morris v. Morris*, 685 So. 2d 673, 675-76 (La. Ct. App. 1996)); Maine (*Doucette v. Washburn*, 2001 ME 38, 766 A.2d 578, 584-85 (2001)); Maryland (*Murray v. Murray*, 190 Md. App. 553, 989 A.2d 771, 777 (Ct. Spec. App. 2010)); Massachusetts (*Dalessio v. Dalessio*, 409 Mass. 821, 570 N.E.2d 139, 145 (1991)); Minnesota (*Van de Loo v. Van de Loo*, 346 N.W.2d 173, 176-77 (Minn. Ct. App. 1984)); Mississippi (*Tramel*, 740 So. 2d at 291); Missouri (*Mistler v. Mistler*, 816 S.W.2d 241, 249-50 (Mo. Ct. App. 1991)); Montana (*In re Marriage of Blankenship*, 210 Mont. 31, 682 P.2d 1354, 1357 (1984)); Nebraska (*Gibson-Voss v. Voss*, 4 Neb. Ct. App. 236, 541 N.W.2d 74, 78 (1995)); Nevada (*Fredrickson & Watson Constr. Co. v. Boyd*, 60 Nev. 117, 102 P.2d 627, 628 (1940)); New Jersey (*Amato v. Amato*, 180 N.J. Super. 210, 434 A.2d 639, 643-44 (1981)); New Mexico (*Soto v. Vandeventer*, 1952-NMSC 064, 56 N.M. 483, 245 P.2d 826, 832 (1952)); North Carolina (*Johnson*, 346 S.E.2d at 438); Ohio (*Everhardt v. Everhardt*, No. L-86-060, 1987 Ohio App. LEXIS 5892 (Ohio Ct. App. Feb. 6, 1987) (unpublished)); Oklahoma (*Standefer v. Standefer*, 2001 OK 37, 26 P.3d 104, 109 (2001)); Puerto Rico (*Cosme v. 419 Ponce de Leon, Inc.*, 1996 U.S. Dist. LEXIS 10266 (D.P.R. May 24, 1996) (unpublished)); Rhode Island (*Kirk v. Kirk*, 577 A.2d 976, 978-79 (R.I. 1990)); South Dakota (*Johnson v. Johnson*, 2007 SD 56, 734 N.W.2d 801, 810 (2007)); Tennessee (*Gragg v. Gragg*, 12 S.W.3d 412, 418 (Tenn. 2000)); Texas (*Graham v. Franco*, 488 S.W.2d 390, 394-95 (Tex. 1972)); Utah (*Naranjo v. Naranjo*, 751 P.2d 1144, 1148-49 (Utah Ct. App. 1988)); Virginia (*Cunningham v. Cunningham*, No. 0663-95-2, 1996 Va. App. LEXIS 524 (Va. Ct. App. July 23, 1996) (unpublished); West Virginia (*Hardy v. Hardy*, 197 W. Va. 243, 475 S.E.2d 335, 340-41 (1996)); Washington (*Brown v. Brown*, 100 Wn. 2d 729, 675 P.2d 1207, 1213 (1984)); and Wisconsin (*Richardson v. Richardson*, 139 Wis. 2d 778, 407 N.W.2d 231, 234-35 (1987)).

429, 430-31, 42 Ill. Dec. 51 (1980). Under this approach, if the settlement or judgment were acquired during the marriage, it is marital property regardless of the purpose or intent of the payment. *Tramel*, 740 So. 2d at 290. Eleven jurisdictions in the United States have adopted this approach.[17] The Analytic Approach is clearly the majority rule in the United States, and this factor weighs in favor of its adoption.

### 3. Factor Three-The Best Rule for the Virgin Islands

 The Virgin Islands is an equitable distribution jurisdiction, and the Virgin Islands Code contains multiple statutes within title 16 that demonstrate the Legislature's intent that each spouse's separate property be recognized and segregated from the marital assets subject to distribution.[18] This intention is evidenced by reviewing 16 V.I.C. § 62

---

[17] *E.g.*, Arkansas (*Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718, 721 (1988)); California (*Meighan v. Shore*, 34 Cal. App. 4th 1025, 40 Cal. Rptr. 2d 744, 749 (1995)); Connecticut (*Lopiano v. Lopiano*, 247 Conn. 356, 752 A.2d 1000, 1011 (1998)); District of Columbia (*Boyce v. Boyce*, 541 A.2d 614, 617-18 (D.C. 1988)); Illinois (*In re Marriage of DeRossett*, 173 Ill. 2d 416, 671 N.E.2d 654, 656, 219 Ill. Dec. 487 (1996)); Michigan (*Heilman v. Heilman*, 95 Mich. App. 728, 291 N.W.2d 183, 184-85 (1980)); New Hampshire (*In re Heinrich*, 164 N.H. 357, 55 A.3d 1025, 1028 (2012)); Oregon (*In re: Marriage of Pugh*, 138 Ore. App. 63, 906 P.2d 829, 832 (1995)); Pennsylvania (*Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, 725-26 (1999)); South Carolina (*Marsh v. Marsh*, 313 S.C. 42, 437 S.E.2d 34, 36-37 (1993)); Vermont (*Bero v. Bero*, 134 Vt. 533, 367 A.2d 165, 167 (1976)).

[18] Allocation of property is separate and distinct from providing maintenance to the spouse in need. *See Hanley*, 26 V.I. at 119-20 ("It is clear that [the trial judge] treated the military pension in one of two ways. First, he may have viewed the pension as the husband's property and considered it as partial evidence of his means in determining alimony pursuant to 16 V.I.C. § 109(3). Alternatively, he may have regarded the pension as personal property jointly owned by the parties but did not distribute it or, more precisely, did not provide for 'delivery to the wife of her personal property [i.e., her interest in the pension] in the possession or control of the husband at the time of giving the judgement.' "); *Coman v. Coman*, 492 F.2d 273, 276, 11 V.I. 143 (3d Cir. 1974) ("The district court's finding of beneficial ownership [of the stocks] was merely one 'upon which . . . [it felt] justified in proceeding *for the purposes of fixing alimony and child support.*' " (Emphasis supplied). Mrs. Coman was not declared the owner of any interest in the securities nor was Mr. Coman ordered to convey any or all of the securities to her. Rather, the court was simply determining appellant's assets for the purpose of establishing his ability to pay alimony and child support."); *Knowles v. Knowles*, 354 F. Supp. 239, 242, 9 V.I. 360 (D.V.I. 1973) ("The method of property settlement is a remedy distinct from, and supplemental to, the alimony powers conferred by 16 V.I.C. § 109(3). Unlike alimony, . . . it represents a limited and one-time obligation."); *Poe*, 409 F.2d at 43 ("The test in an application for alimony is not whether the wife has helped the husband to attain his existing financial status. If this were so, an inheritance could not be considered in awarding alimony even if the husband received it while the parties were living together,

titled "Interest in property of spouse"; 16 V.I.C. § 66 titled "Liability of spouse for debts of the other"; 16 V.I.C. § 67 titled "Separate estates"; 16 V.I.C. § 68 titled "Separate property of wife"; 16 V.I.C. § 69 titled "Property acquired by labor of wife"; 16 V.I.C. § 70 titled "Liability for civil injuries committed by married woman"; and 16 V.I.C. § 71 titled

---

for an inheritance under an intestate law or even by will ordinarily does not result from the wife's efforts.").

While property may be a party's individual property not subject to distribution as such, an award of maintenance is dependent on the parties' relative abilities and needs, and the Virgin Islands has long recognized that a spouse's individual assets are appropriately considered when determining a spouse's award of maintenance. 16 V.I.C. § 109(3); *Poe,* 409 F.2d at 43 ("It is the circumstances surrounding the parties, the wife's necessities and the husband's financial ability, the physical condition of the parties, the nature of their life together, and in these modern times the wife's independence and ability to earn her own way, which must all be considered by the court in the exercise of its discretion in awarding or denying alimony."); *but see Kelman v. Kelman,* 21 V.I. 307, 310 (V.I. Super. Ct. 1985) ("The court also cannot find that [one spouse's] delay will cause [the other spouse] hardship. Mr. Kelman claims that had he known he would be assessed interest on his arrears, he might very well have paid them earlier just to 'keep the interest at a manageable level.' This argument only begs the question. If he was able to pay his arrears earlier, why didn't he? He knew he had an obligation to do so. Yet, the record is devoid of [the other spouse] taking any action that would permit Mr. Kelman to reasonably assert that he was led to believe that he had been released from the obligation."); *Alleyne v. Alleyne,* 18 V.I. 544, 547 (D.V.I. 1981) ("Appellee has demonstrated her ability to live independently in the past. Appellant's monthly salary of six hundred and ten dollars ($610.00) take home pay, can only provide the appellant with little more than the basic necessities of life, the very high cost of living in St. Thomas considered, and thus appellant's right to his full salary should be abrogated only if appellee establishes that she is in necessitous circumstances. In sum, the appellee is not entitled to an award of alimony unless she presents evidence which proves her medical problems now prevent her from fully supporting herself."); *Emanuel v. Emanuel,* 15 V.I. 103, 127 (D.V.I. 1978) ("Dr. Emanuel has faced more than his full share of human disappointment and adversity. His unfortunate financial condition, in this court's opinion, is not due to a desire on his part to avoid his liability, but rather to circumstances beyond his control."); *e.g., Feddersen v. Feddersen,* 68 F. Supp. 2d 585, 597-98, 41 V.I. 230 (D.V.I. App. Div. 1999) (upholding a trial court's determination of distribution of marital assets in light of the wife's role in making the husband a wealthy man, who purported to title some assets in his own name or that of a business); *Viles v. Viles,* 316 F.2d 31, 4 V.I. 415, 425 (3d Cir. 1963) ("Since appellee was entitled to a $4,000 salary, could have received it had he so elected, and achieved the same result by a different formal procedure, we think a court exercising equitable jurisdiction in administering an alimony award should treat this item as part of appellee's 1959 income."); *cf. Goodman v. Goodman (Goodman II),* 13 V.I. 112, 121 (D.V.I. 1976) ("The decision to use the approximately $15,000.00 for the children's education was the plaintiff's own choice. By her own actions, . . . the plaintiff deposited these monies in an unnamed Swiss bank in trust for her children. If there is any inequity in this situation, it falls on the defendant, who, through the willfully contemptuous behavior of the plaintiff, was deprived of his right to a full adjudication of the parties' property rights.").

"Contracts and liabilities of wife." These statutory provisions constitute a clear legislative mandate that a spouse's separate, personal property should be excluded from the marital estate. Based on the legislature's unambiguous intent to preserve the separateness of a spouse's property within the equitable distribution system of marital property, we will apply the Analytic Approach because it is most consonant with the legislative intent underlying the law of the Virgin Islands governing dissolution of marriages.

### B. Applying the Analytic Approach, the Superior Court Abused its Discretion When it Failed to Consider What Portion of the Personal Injury Payment Compensated the Spouses for Lost Income, Medical Expenses, and the Extent to Which the Non-Injured Spouse Contributed Additional Effort to the Marital Union Due to the Inability of the Injured Spouse to Contribute While Recovering.

█ In applying the Analytic Approach, the Superior Court was required to engage in a three-step analysis. First, the court identifies what property constitutes the marital estate. Second, the court determines the value of the property in the marital estate. Third, the court equitably distributes the property of the marital estate. *Zimin v. Zimin*, 837 P.2d 118, 121 (Alaska 1992); *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. Ct. App. 2003). "Where the settlement proceeds or an award do not allocate between economic and non-economic damages, as in this case, the trial court must, nonetheless, review the evidence presented . . . and make its own allocation as to the different types of loss." *Murray v. Murray*, 190 Md. App. 553, 989 A.2d 771, 779 (2010) (citation omitted).

█ █ The Superior Court stated in its order, "Mr. Inniss received $34,688.59 from the settlement proceeds, which were $100,000 prior to deductions for attorneys' fees and medical bills. As these expenses had already been deducted, the remainder may be considered to be compensatory for lost income and expenses." Having determined the Analytic Approach to classification of a personal injury settlement or jury award as marital or personal property is the most appropriate for the Virgin Islands, and applying the Analytic Approach, we conclude that the Superior Court's decisions and awards were an abuse of discretion. While

287

Bertram testified in a conclusory fashion that the settlement[19] was for pain and suffering, there was no additional evidence provided in the trial record to support this assertion. Furthermore, there was testimony by both parties that Bertram was unable to work for a minimum period of six months due to his injuries for which the settlement payment compensated him. The Superior Court failed to consider what portion of the $34,688.95 was to compensate for Bertram for his lost earnings during the marriage and what portions were for Vashtie's claims for compensation, as the non-injured spouse, for loss of services or loss of consortium.[20]

## IV. CONCLUSION

For the reasons elucidated above, the Superior Court's December 4, 2013 decision is reversed and the matter remanded for consideration of all the components of damages for which the settlement agreement was meant to compensate and for distribution in accordance with this opinion.

---

[19] It is clear under the Analytic Approach that there is no difference between a personal injury settlement payment and a personal injury award in how the property is allocated. As such, regardless of whether a party to a divorce is compensated for personal injuries through a settlement agreement or a jury award after trial, the Analytic Approach is applied in determining what, if any, portion is marital property subject to distribution.

[20] On remand, the burden on the trial court may be obviated to a substantial degree by taking judicial notice of the pleadings filed in the personal injury action because the damages alleged in the pleadings in that suit would be evidence showing the purpose of the compensation. However, the pleadings would not be dispositive; and an evidentiary hearing would be necessary, as the parties may have chosen to forego certain of Vashtie's claims, e.g., loss of consortium, for strategy reasons relating to their ability to bear to costs of the litigation and not based on a belief that the lawsuit was not meant to compensate for those damages.